## MINNIE T. SMITH v. TWIN CITY MOTOR BUS COMPANY.[1]

February 18, 1949.

No. 34,795.

*Brenner & Bouchard,* for appellant.

*John F. Dulebohn* and *Donald M. Jardine,* for respondent.

[1] Reported in 36 N. W. (2d) 22.

KNUTSON, JUSTICE.

This is an appeal from an order of the trial court denying plaintiff's motion for a new trial on the question of damages only.

Plaintiff suffered injuries in an automobile collision which occurred on September 5, 1946, at the intersection of Franklin and Hennepin avenues in the city of Minneapolis, between an automobile in which she was riding as a passenger and a bus owned by defendant. Plaintiff's injuries consisted of bruises to her leg from the ankle to the knee, to her shoulder, forearm, and head. There was some discoloration of the tissues, which cleared up within a comparatively short time. She was taken to Minneapolis General Hospital immediately after the collision. She was there examined, and X rays were taken of the injured portions of her body, after which she returned home. Plaintiff now claims that as a result of these injuries she is suffering from arthritis in her right shoulder and other portions of her body.

Plaintiff first discovered that she was suffering from arthritis in one of her fingers in 1937. In 1940, she found that she was suffering from arthritis in her lower back. She went to a doctor and took some treatments and later submitted to some surgery, apparently for the purpose of trying to clear up the arthritis. Her condition improved somewhat, and she was able to work without any difficulty until 1945. In August 1945, she injured her left ankle and thereafter suffered from arthritis in that ankle. Her testimony was that "in January of 1946, it [the arthritis] seemed to be spreading, all my joints they seemed to be aching and hurting." In March 1946, she went to Mudbaden for treatments, from which she obtained some relief. In April 1946, she went to see Dr. Marius Jensen and was treated for arthritis. At his suggestion, she went to Fairview Hospital and remained there three weeks, receiving penicillin to "help that infection in the whole system." Prior to May 1946, plaintiff had been employed by the F. W. Woolworth Company. She left her employment on May 22, 1946, and did not return until about a month after the accident.

Dr. Jensen, who treated plaintiff from April 1946, was called as a witness for plaintiff. He testified as follows:

"Q. Doctor, will you tell the court and jury what complaints Mrs. Smith had at the time she came to you in April of 1946?

"A. Well, she had arthritis of the left hand side, the leg and forearm and hand. She had it on both hands.

\* \* \* \* \*

"Q. What did you discover in your examination?

"A. Well, that her hands were swollen, fingers sore and painful and her left hand side, left leg was very bad, she couldn't hardly walk and I think it was her left arm, too, that bothered her.

\* \* \* \* \*

"Q. How long was she in the hospital, Doctor?

"A. I think she was there from April 27th—that couldn't be— from May 22nd.

"Q. Approximately how many days?

"A. Twenty-two days.

"Q. What was the treatment given her there at that time?

"A. We started a diet, of course, a diet, and then gave her penicillin, did that by injection every three hours. And then we used some hot applications.

\* \* \* \* \*

"Q. I have reference, Doctor, to the basis, what is the diagnosis of the disease presently from which Mrs. Smith is suffering?

"A. Arthritis.

"Q. Is that chronic?

"A. Chronic, yes.

"Q. Chronic arthritis?

"A. Yes, it is chronic."

Dr. John F. Pohl, an orthopedic specialist, was called as a medical expert by plaintiff. He had not seen plaintiff prior to February 25, 1947, which was some months after the accident. In response to a question as to what he found from an examination of plaintiff on that date, Dr. Pohl testified as follows:

"A. Mrs. Smith had arthritis involving her whole left shoulder, left elbow, left wrist, right shoulder, right elbow, wrist, fingers and both hips. Both knees and both feet.

"Q. Did you find the condition more severe in one point than the other?

"A. The right shoulder and the left foot at that time impressed me as being more severely involved."

With reference to the cause of the type of arthritis from which plaintiff was suffering, Dr. Pohl testified, "Well, we frankly don't know what causes arthritis, but I think it is fair to say from arthritic experience that injury or bruises can aggravate arthritis." A motion was made to strike the above answer, but no action was taken by the court, and it remains in the record.

On cross-examination Dr. Pohl testified as follows:

"Q. What kind of an infection has the lady got?

"A. She has an infectious type of arthritis.

"Q. What kind of infection is it?

"A. That is unknown.

"Q. Aren't infections generally the type that can be discovered by examination of the blood or conditions something like that?

"A. Not in arthritis.

"Q. In other words, the doctors don't know what it is, but they claim it infectious arthritis?

"A. Call it infectious in that it is related to infection somewhere in the body. If I might elaborate, possibly in infected teeth, might have swollen joints, infection in the joints and the condition in the joints is from infection in the teeth.

"Q. You say that there is some hidden infection that originates in some part of the body, in the system that cannot be discovered?

"A. Yes, that usually is the conception of infectious arthritis.

"Q. And this is a theory?

"A. Partly theory and partly real, in that if you clear up the infection, the arthritis might disappear.

* * * * *

"Q. To make a long story short, Doctor, unfortunately some people seem to have either infectious or systematic tendency toward arthritis?

"A. Yes.

"Q. The doctors have studied the question long and hard and occasionally they do find some infectious source of infection? Find it in the body and remove it. There is an improvement, that is true?

"A. Yes.

"Q. And if they don't find it they very seldom improve?

"A. No, some patients clear up spontaneously.

"Q. But generally they don't do as well?

"A. They generally find that the patient does not get well.

"Q. Yes, if they don't find the infection's source, they do not generally get well?

"A. That is a fair statement.

"Q. It is also true, the longer the condition exists, generally speaking, the more difficult it is from the treatment's standpoint and also the probability of curing it?

"A. As a general statement, that is true."

Based upon a hypothetical question in which the doctor was asked to assume certain facts outlined to him, he was asked his opinion as to whether the accident of September 5, 1946, was the cause of plaintiff's present disability or whether there was any causal relationship between the accident and her disability. The court sustained defendant's objection to the question on the ground that there was no foundation for the opinion and that it was too speculative and conjectural.

The jury returned a verdict for plaintiff of $400. Plaintiff assigns as error the court's refusal to permit Dr. Jensen to give his opinion as to the causal relationship between the accident and her present disability, and the refusal of the court to permit Dr. Pohl to answer a similar question based upon a hypothetical question.

Plaintiff's motion for a new trial is based upon the following grounds: (1) That the damages were grossly inadequate and ap-

pear to have been given under the influence of passion and prejudice; (2) that the court erred in excluding the testimony of Dr. Jensen as to the causal relationship between the injuries which plaintiff sustained on September 5, 1946, and her present disability; and (3) that the court erred in sustaining the objection to plaintiff's first hypothetical question to Dr. Pohl on the matter of causal relationship between plaintiff's present disability and the injuries sustained in the accident of September 5, 1946.

In her assignments of error in this court, plaintiff has abandoned the first ground above set forth, so we need not consider that.

With respect to the testimony of Dr. Jensen, the record discloses that after plaintiff's counsel had attempted to frame a question seeking to elicit the doctor's opinion defendant's counsel interposed an objection, after which a conference between counsel for plaintiff and defendant and the court took place. Thereafter, plaintiff's counsel abandoned any further effort to have Dr. Jensen express his opinion. It does not appear what transpired in the conference between counsel and the court. No exception was taken to any ruling or order of the court, nor was any ruling made on the objection so far as appears from the record. Consequently, there is nothing for us to consider insofar as the testimony of Dr. Jensen is concerned.

The only serious question involved concerns the admissibility of the opinion of Dr. Pohl.

■ It is elementary that the function of expert testimony is to assist the jury in reaching a correct conclusion from the facts in evidence, based upon the superior knowledge of the expert concerning the subject matter covered by his opinion.

■ Hypothetical questions must be based upon facts admitted or established, or which, if controverted, might be legitimately found by the jury from the evidence. The question should embody substantially all the facts relating to the subject matter. Wittenberg v. Onsgard, 78 Minn. 342, 81 N. W. 14, 47 L. R. A. 141. The question must embody substantially all undisputed facts relating to the subject upon which the opinion of the witness is asked.

Harju v. Allen, 146 Minn. 23, 177 N. W. 1015; 2 Dunnell, Dig. & Supp. § 3337.

The hypothetical question submitted to Dr. Pohl falls far short of meeting the requirements of the above rules. The first question submitted, which is the only one covered in the motion for a new trial, reads:

"Now, Doctor, assuming that Mrs. Smith, previous to the 5th day of September, 1946, had no complaints of arthritis in the right shoulder or the right hip or the right knee or the right ankle, and assuming, Doctor, that on September 5, 1946, that she sustained injuries which involved a severe bruising of the right shoulder, of the right hip, the right knee and the right ankle and that there were considerable scraping injuries on the forward aspect of the right leg and that that bruising was so severe that she was pretty generally covered with edema on the right side and that it was some three weeks before it was dissolved, have you got an opinion with reasonable medical certainty that the arthritis from which she now suffers was caused by that injury?"

Nothing was included regarding plaintiff's preëxisting arthritic condition; the nature of the arthritis; the treatments taken prior to the accident; or any of the prior history of her arthritic condition.

Upon objection, plaintiff's counsel added other assumed facts to the first hypothetical question. Even if we can consider these later questions in the absence of any mention thereof in the motion for a new trial, they still fall far short of meeting the requirements above set forth. For instance, they do not state that plaintiff's arthritis was of an infectious type, nor do they state that she had undergone treatments of various kinds for the purpose of attempting to locate and remove the infection which the doctors thought gave rise to the arthritis; neither do they state that plaintiff's arthritis was chronic and gradually spreading throughout her body, which clearly appears from the testimony of plaintiff herself, as well as that of her doctor.

■ Much must be left to the sound judicial discretion of the trial court in determining whether a sufficient foundation has been laid so that the opinion of an expert will be of aid to the jury. 2 Wigmore, Evidence (3 ed.) § 682. When it is apparent that the opinion of an expert is based upon nothing but conjecture or speculation, it should not be admitted.

In Mageau v. G. N. Ry. Co. 106 Minn. 375, 119 N. W. 200, we held that a verdict based upon an opinion of a physician that the death of a person was due to one disease instead of another, both diseases being caused by the action of germs and manifested by similar external symptoms, based upon general observation, without a post-mortem or microscopic examination, could not stand, for the reason that such opinion was too conjectural and uncertain.

In Briggs v. Minneapolis St. Ry. Co. 52 Minn. 36, 53 N. W. 1019, the action involved the death of plaintiff's husband. The facts disclosed that for some 18 years prior to his death he had been subject to frequent attacks of illness from heart disease. On the evening of his death, shortly after he had taken a seat in one of defendant's cars, he suffered one of these attacks. The driver of the car, believing that he was drunk, dragged him out of the car and deposited him on the sidewalk across the street. He died a few minutes later. The action was brought against the streetcar company for negligently causing decedent's death. Plaintiff assigned as error the trial court's exclusion of an opinion of a medical expert based upon a hypothetical question as to the immediate cause of death. We held that such opinion was properly excluded. The court, speaking through Mr. Justice Mitchell, said (52 Minn. 40, 53 N. W. 1020):

"* * * Courts have gone far enough in subjecting life, liberty, and property to the mere speculative opinions of men claiming to be experts, and we are not disposed to extend the rule into the field of mere hypothetical conjecture, which, in a case like the present, must necessarily have been so uncertain and unreliable as to be

purely conjectural, and utterly unsafe for either court or jury to adopt."

In Honer v. Nicholson, 198 Minn. 55, 59, 268 N. W. 852, 854, we said concerning medical testimony:

"* * * On its face it is but conjecture, and affirmative decisions cannot stand on such unsupported speculation even though it is a professional emanation."

In the case now before us, it appears that X-ray photographs were taken of plaintiff both before and after the accident. So far as appears from the record, they were not offered in evidence. What they might have shown regarding her arthritic condition is left unanswered.

If we accept the testimony of Dr. Pohl that plaintiff's arthritis was of an infectious origin and that medical science lacks knowledge both as to the exact cause and cure for such arthritis, it becomes apparent that his opinion concerning the causal relationship between plaintiff's disability and the injuries sustained in the accident are left so far in the field of speculation and conjecture as to be of no help to the jury. If as Dr. Pohl testified the arthritis was of an infectious type and it was not shown that the infection, whatever or wherever it might be, was caused or aggravated by the accident, it is difficult to see how the witness could have given an opinion based on anything but conjecture as to the causal relationship between plaintiff's arthritic disability and the accident. It is patent that arthritis had been present for several years before the accident. The court did permit Dr. Pohl to testify that injury or bruising can aggravate arthritis. His opinion concerning the causal relationship between plaintiff's arthritis after the accident and the injuries which she received in the accident would add nothing more to the testimony than had already been admitted. At best, it is clearly apparent that the origin of the arthritis was not the accident and that if there was any causal relationship at all between her condition at the time of the trial and the accident it could have been only that of an aggravation of a preëxisting condition and nothing

more. The hypothetical question submitted to Dr. Pohl did not cover this situation at all, and, under the circumstances, there was no error in excluding such opinion.

Affirmed.