## HILDA AASEN v. CLARA AASEN AND OTHERS. ARTHUR HANSON AND BERTHA MOAN, APPELLANTS.[1]

February 18, 1949.

Nos. 34,793, 34,794.

[1]Reported in 36 N. W. (2d) 27.

2

*Johanson, Winter & Lundquist,* for appellant Clara Aasen.

*Field, Field & Arvesen* and *N. C. Callaghan,* for appellants Arthur Hanson and Bertha Moan.

*Kenneth H. Dell* and *John J. McCarten,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

This is an action to recover for injuries sustained by plaintiff arising out of a collision between a 1937 Ford automobile owned by defendant Clara Aasen, daughter of plaintiff, and driven by her father, G. T. Aasen, husband of plaintiff, and a 1931 Chevrolet automobile owned by defendant Arthur Hanson and driven by defendant Bertha Moan.

Both drivers were operating the automobiles with the full consent and permission of the respective owners. For obvious reasons, G. T. Aasen was not joined as a party defendant. The jury returned a verdict of $5,378 for plaintiff against all the defendants. After plaintiff had consented to the elimination from the verdict of certain medical expenses not properly recoverable by her in her suit, but which were items for which plaintiff's husband could recover, and a consequent reduction of the verdict to $4,931, the trial court

denied the motions of the defendants for judgment notwithstanding the verdict or a new trial. From the judgment entered, the defendants appeal.

The collision occurred at about seven o'clock in the evening of October 10, 1945, on a strip of highway about 120 feet long extending northeast and southwest between two curves on a highway in a rural area. The surface of the highway, although graveled, was smooth and level, and there was no center line marked. Although it was only dusk and visibility was good, both drivers had turned on their lights. Except for the testimony as to the directions in which the two cars were traveling, the evidence is in irreconcilable conflict. The Aasen car was traveling northeast and the Hanson car southwest. As the Aasen car rounded a curve into the 120-foot strip, the Hanson car was coming down a hill on a curve at the other end of the strip. There were no other cars on the highway, and each driver had a clear view of the entire strip. According to the testimony of G. T. Aasen, the lights of the Hanson car were so glaring that when the cars were about 120 feet apart he pulled down his sun visor. This restricted his vision to about 10 or 15 feet ahead. Aasen continued forward on his side of the highway, close to the shoulder, traveling between 20 and 25 miles per hour. The Hanson car was approaching him at a speed of from 50 to 60 miles per hour. Almost immediately after Aasen pulled down his sun visor, the Hanson car came in on Aasen's side of the highway, causing the collision. This is disputed by testimony for Hanson and Moan, whose claim is that the Hanson car stayed on the right side of the road; that its speed was about 15 to 20 miles per hour and the speed of the Aasen car about 40 to 45 miles per hour; and that the Aasen car swerved over the center of the road and thereby caused the collision.

In December 1946, Arthur Hanson and Bertha Moan brought suit against G. T. Aasen for damage to the Hanson car and for injuries to Bertha Moan. G. T. Aasen counterclaimed against both for personal injuries and damage to the Aasen car. These cases were consolidated in the trial court and a verdict was returned for

G. T. Aasen. On appeal, this court decided that the question of contributory negligence was one of fact and not of law under the evidence, and affirmed the verdict of the jury finding, in effect, that the sole cause of the accident and the injuries and damage which proximately resulted therefrom was the negligence of Arthur Hanson and Bertha Moan. Moan v. Aasen, 225 Minn. 504, 31 N. W. (2d) 265.

After the collision, the Aasen car remained entirely on the traveled part of the highway at an angle of about 45 degrees, with the left front portion of the car over the center of the highway. Testimony as to the distance which the Aasen car extended over the center of the road varied from "a little bit over" to three or four feet over. The Hanson car, on the other hand, was off the shoulder of the road on the northwest side of the road, with the rear wheel in the water of a small lake bordering the highway on that side. Most of the broken glass and other debris from the collision was on the Hanson or northwest side of the road. Moan and Hanson contend that these physical facts demonstrate that the impact occurred on the Hanson side of the highway and that therefore G. T. Aasen was the person whose negligence was responsible for the accident and that the liability for any damage should be charged to Aasen alone. Hanson and Moan allege as error the trial court's refusal to give the jury a requested instruction in the following language:

"If you find that the cars collided on the north or Hanson side of the road, then, under the evidence in this case, I instruct you that you must bring in a verdict in favor of the defendants Hanson and Moan."

There were no uninvolved witnesses to the collision or to the position of the two cars in respect to the center of the road immediately prior to the collision. The only testimony on these points comes from those who were either passengers or drivers of the two cars involved, and their testimony is diametrically opposed, each claiming that his car was on the right side of the road and that the other car crossed the center. From such evidence the jury could

have properly found that one, the other, or both of the drivers had crossed the center and that either or both were guilty of negligence. Physical facts are of aid to the jury, but need not be conclusive of how the accident happened. See, Romann v. Bender, 190 Minn. 419, 424, 252 N. W. 80, 82. This case does not fall within the doctrine of Reiter v. Porter, 216 Minn. 479, 13 N. W. (2d) 372.

It was for the jury to determine from all the evidence whether or not either driver was negligent in the operation of the automobile he was driving. To have given the instruction requested by Hanson and Moan would have misled the jury by an incorrect statement of the law, for it would have eliminated from consideration by the jury any questions of recklessness or incompetence on the part of Bertha Moan, as well as other elements of law properly for the jury's consideration in this case. Instead of giving this requested instruction, the court properly instructed the jury on this point of law by reading to them certain passages from the highway traffic regulation act (M. S. A. 169.18, subd. 1), which we quote, together with the court's comments thereon:

" 'Upon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway, except as follows:' and then follows certain exceptions that are not important here. The rule for passing [subd. 2]:

" 'Drivers of vehicles proceeding in opposite directions shall pass each other to the right, and upon roadways having width for not more than one line of traffic in each direction each driver shall give to the other at least one-half of the main traveled portion of the roadway, as nearly as possible.' "

The trial court then properly instructed the jury that violation of such rules was merely prima facie evidence of negligence and that such violation could be explained and the driver thereby relieved of liability.

■ In his argument to the jury, counsel for Clara Aasen read a portion of the testimony of Milo Nelson, a witness called by plaintiff. Counsel for Hanson and Moan objected to this, and they

now allege that the court erred in overruling this objection and allowing counsel for Clara Aasen to proceed. It is elementary that the conduct of a trial generally rests in the discretion of the trial court. This includes the practice of reading to the jury excerpts from the court reporter's transcript. Reed v. State, 147 Ind. 41, 46 N. E. 135; 64 C. J., Trial, § 275. After the close of the reception of testimony and the admission of evidence, any practice whose purpose is to create a primary impression of facts upon the minds of the jurors is of doubtful propriety, but, nevertheless, the reading of portions of the transcript of testimony to the jury by counsel is permitted in Minnesota. In Bonderson v. Hovde, 150 Minn. 175, 178, 184 N. W. 853, 854, this court said:

"* * * This practice is so common and sometimes so necessary to enlighten the jury that we should encourage rather than discourage it, when permitted with such an exercise of fairness as was exhibited by the court in this case."

There is no showing in the instant case that the trial court abused its discretion in allowing counsel. for Clara Aasen to read from the court reporter's transcript, and there is no showing that Hanson and Moan were in any way prejudiced so as to require action by this court to insure the proper administration of justice.

■ Hanson and Moan also allege as error the action of the trial court in allowing G. T. Aasen to give his estimate of the speed at which the Hanson car was traveling. Aasen first noticed the Hanson car when it was about 2,200 feet away, and he observed it up to the point where he turned down his sun visor at the time the Hanson car was 120 feet away. During this time, Aasen's view of the Hanson car was unobstructed, and, according to his testimony, he observed the Hanson car during that period in the same manner that most drivers observe an approaching automobile. Ordinarily, the speed of an automobile is not a matter of exclusive expert knowledge and skill, and anyone of reasonable intelligence, with ordinary knowledge of time and distance, is a competent witness to give an estimate. See, Dunkelbeck v. Meyer, 140 Minn. 283,

167 N. W. 1034; Mierendorf v. Saalfeld, 138 Neb. 876, 881, 295 N. W. 901, 903. The rule against admitting opinion evidence does not bar admission of evidence as to the speed of a moving object such as an automobile. 7 Wigmore, Evidence (3 ed.) § 1977. It is primarily the duty of the trial court to determine whether the circumstances are such that the evidence should be admitted. See, Spencer v. Johnson, 203 Minn. 402, 408, 281 N. W. 879, 882; 2 Dunnell, Dig. & Supp. § 3313.

Under our ruling in the Dunkelbeck case, we hold that the trial court did not abuse its discretion by admitting this testimony of G. T. Aasen. Marsh v. Henriksen, 213 Minn. 500, 7 N. W. (2d) 387, which is asserted as controlling by counsel for Hanson and Moan, is not applicable. In that case, the witness admitted that at the time of the accident she had neither the knowledge nor the experience necessary to judge the speed of an automobile, but she claimed that she had subsequently acquired such ability and had formed an opinion retrospectively. After confirming the rule that the question whether a sufficient foundation had been laid for the admission of the witness's opinion was clearly a matter within the discretion of the trial court, this court affirmed the trial court's ruling excluding her testimony as to the speed of the automobile.

By their assignments of error Nos. 3 to 8, inclusive, Hanson and Moan contend that Dr. Edwin J. Tanquist, a witness called by plaintiff, was allowed to "blow up" plaintiff's injuries by speculative and improper medical opinions. They particularly specify that Dr. Tanquist was permitted to answer a hypothetical question which did not include an important fact; that Dr. Tanquist was permitted to testify that plaintiff had suffered a personality change between October 16, 1946, when he first treated her, and February 1947, and that this change would be permanent; and that Dr. Tanquist was permitted to speculate in giving conclusions as to an organic injury to the brain and nervous system.

A hypothetical question must be framed in accordance with some theory which the evidence reasonably tends to support. It should embody substantially all the facts relating to the subject upon

which the opinion of the witness is asked. 2 Dunnell, Dig. & Supp. § 3337, and cases cited.

"* * * Such questions must include only facts that are supported by evidence and should embody substantially all facts relating to the particular matter upon which an expert opinion is sought to be elicited, but they need not include all facts pertinent to the ultimate issue." 20 Am. Jur., Evidence, § 788.

"The ordinary function of experts is to assist the jury, by their superior knowledge in reaching a correct conclusion from the facts in evidence. Their opinions are not ordinarily conclusive upon the jury, but are mere items of evidence to be considered by the jury along with the other evidence in the case." 2 Dunnell, Dig. § 3334.

It is true that in the instant case the hypothetical question submitted by plaintiff to Dr. Tanquist referred to the fact that she had vomited blood a day or two after being in the hospital without stating the fact that she had had an ulcerous condition previous to the accident. The court overruled Hanson and Moan's objection to the question as submitted. We do not believe that the ruling of the trial court was such prejudicial error as to justify a new trial on that ground. The record shows that there was considerable testimony as to plaintiff's previous ulcerous condition which the jury could have considered in connection with the hypothetical question.

In connection with the subject of hypothetical questions, 2 Wigmore, Evidence (3 ed.) § 682(b), says in part:

"The question, on principle, *need not include* any particular number of facts; *i. e.* it may assume any one or more facts whatever and *need not cover all the facts which the questioner alleges* in his case. * * * For reasons of principle, then, and to some extent of policy, the natural conclusion would be that the questioner need not cover in his hypothesis the entire body of testimony put forward on that point by him or by the opponent, but may take as limited

a selection as he pleases and obtain an opinion on that basis. Such is the orthodox doctrine as applied by most Courts. [Citing cases.]

\* \* \* \* \*

"\* \* \* The trial judge should be given discretion to determine how far the counsel can and must properly limit his questions, and how far the jury may be trusted, with the aid of argument, to discover the conditional nature of the opinion."

It is true that the hypothetical question propounded and objected to in the instant case did omit a fact, but we believe that the question did embody substantially all the facts and that the omission was a minor inaccuracy. A consideration of the question in the context of the examination of the witness does not show that the testimony would present a false picture or that the jury would be misled. The purpose of such testimony is to assist the jury in reaching a correct conclusion from the facts in evidence, and this court is inclined to defer to the judgment of the trial court as to the weight to be attached to the testimony of expert witnesses. O'Connor v. Pillsbury Flour Mills Co. 197 Minn. 534, 267 N. W. 507.

The remainder of Dr. Tanquist's testimony to which Hanson and Moan objected was based upon observations made while plaintiff was his patient. The facts upon which he based his conclusions were presented during the examination, and the conclusions were clearly within the realm of expert knowledge and were not merely speculative.

■ Clara Aasen asserts as her first assignment of error that the court erred in refusing to direct a verdict in her favor and against plaintiff, on the basis that the facts show that Clara Aasen had delivered the automobile to G. T. Aasen and plaintiff; that at the time of the accident it was in their possession and control; and that the exclusive use was in them and had been for over 30 days prior to the accident. Clara Aasen claims that, since she was not the owner of the car, she is in no way liable, even if G. T. Aasen was negligent, and she seeks to invoke M. S. A. 168.01, subd. 11, to show that she is not the owner of the automobile. That subdivision reads as follows:

" 'Owner' means any person, firm, association, or corporation owning or renting a motor vehicle, or having the exclusive use thereof, under a lease or otherwise, for a period of greater than 30 days."

That statute is not applicable in this case. The Minnesota owner's-vicarious-liability section of the safety responsibility act (§ 170.54) reads as follows:

"Whenever any motor vehicle, after Laws 1945, Chapter 285, becomes effective, shall be operated upon any public street or highway of this state, by any person other than the owner, with the consent of the owner, express or implied, the operator thereof shall in case of accident, be deemed the agent of the owner of such motor vehicle in the operation thereof."

L. 1945, c. 285, became M. S. A. c. 170. Section 170.21, subd. 1, provides:

"The following words and phrases, when used in this chapter, shall, for the purpose of this chapter, have the meanings respectively ascribed to them in this section except in those instances where the context clearly indicates a different meaning."

Subd. 9 defines "Owner" as—

"a person who holds the legal title of a motor vehicle, or in the event a motor vehicle is the subject of an agreement for the conditional sale or lease thereof with the right of purchase upon performance of the conditions stated in the agreement and with an immediate right of possession vested in the conditional vendee or lessee, or in the event a mortgagor of a vehicle is entitled to possession, then such conditional vendee or lessee or mortgagor shall be deemed the owner for the purposes of this chapter."

In construing statutes of this type, courts have required proof of three elements in order to impose liability upon the owner: (1) That the owner of the automobile was in fact an "owner" as the term is interpreted under the provisions of the statute; (2) that the use was with the express or implied consent of the owner; and (3) that the driver's negligent operation of the automobile caused

the damage. 21 Minn. L. Rev. 827. There is no dispute as to the fact that Clara Aasen consented to the use of her automobile by G. T. Aasen during her absence; and, under our interpretation of c. 170, it follows that she is the owner of the 1937 Ford automobile involved in this case and is liable under the doctrine of *respondeat superior* for any damage caused by the negligence of G. T. Aasen in its operation.

Under the doctrine of Miller v. J. A. Tyrholm & Co. Inc. 196 Minn. 438, 265 N. W. 324, a husband's immunity from suit in tort by the wife does not inure to the benefit of the owner of the automobile for whom the husband was acting as agent. The reasoning of Mr. Justice Olson in the Tyrholm case shows clearly that the doctrine is applicable in the instant case.

■ As her third assignment of error, Clara Aasen alleges that the trial court erred in refusing to allow her to amend her answer so as to include a statement of the prior case on this fact situation, viz.: Moan v. Aasen, 225 Minn. 504, 31 N. W. (2d) 265, in which G. T. Aasen was exonerated from any negligence and liability and was allowed to recover from Hanson and Moan for the latter's negligence. It is the contention of Clara Aasen that that case makes the issues herein involved *res judicata*.

The amendment of pleadings is a matter lying largely within the discretion of the trial court, and its action will not be reversed on appeal unless it was clearly an abuse of this discretion. Bass v. Ring, 215 Minn. 11, 9 N. W. (2d) 234; 5 Dunnell, Dig. & Supp. § 7696, and cases cited. Though the amendment in the instant case was not proposed until the case was called for trial, the trial court chose to base its refusal of the motion on the ground that the defense of *res judicata* had no merit. Counsel for Clara Aasen admits in his brief that to allow the defense in this case would be to extend the doctrine of *res judicata* to include a situation where there had been a final adjudication of an issue, even though plaintiff in a subsequent action in which the defense was raised was not a party to the original adjudication. There has been no decision in Minnesota which has applied the doctrine of *res judicata* in such a case,

and we are not prepared to extend it so as to embrace such cases. The trial court correctly interpreted Minnesota law, and we cannot hold that there was an abuse of discretion in doing so.

■ By her fourth assignment of error, Clara Aasen claims that the trial court erred in denying her motion for a directed verdict, in that the evidence does not justify a verdict in favor of plaintiff as against Clara, since plaintiff completely exonerated Clara from negligence by her testimony. The trial court disposes of this contention in his memorandum, attached to and made a part of his findings, and we adopt it as our decision on this point. It reads:

"There was evidence in the case from which the jury could find that he [G. T. Aasen] was not on his own side of the road. There was also testimony from which the jury could find that he was negligent in other respects, which testimony she [plaintiff] did not cover in her evidence at all. Further, I do not feel that her testimony concerns matters so peculiarly within her own knowledge that she could not be mistaken about some of the things concerning which she testified. I feel that she was a participant or observer and giving her impressions as such, within the rule in Vondrashek v. Dignan, 200 Minn. 530, 274 N. W. 609."

■ All the defendants have contended that the verdict was excessive. This court has frequently said that the measure of recovery in each case depends upon the facts and that other decisions are not controlling. See, Christenson v. Village of Hibbing, 219 Minn. 141, 16 N. W. (2d) 881. In determining whether or not a verdict is excessive, it is proper to take into consideration the decreased purchasing power of the dollar. Nubbe v. Hardy Continental Hotel System, 225 Minn. 496, 31 N. W. (2d) 332; Heitman v. City of Lake City, 225 Minn. 117, 30 N. W. (2d) 18; Eichten v. Central Minnesota Coop. Power Assn. 224 Minn. 180, 28 N. W. (2d) 862; 2 Dunnell, Dig. & Supp. § 2595. In view of all the circumstances of this case (and it would add nothing to review all the testimony as to injuries and complications suffered by plaintiff),

we feel that the verdict was not excessive or patently the result of passion or prejudice.

Affirmed.

---

[1]Reported in 36 N. W. (2d) 22.