NOBLE C. STORBAKKEN v. JOSEPH E. SODERBERG.[1]

March 2, 1956.

No. 36,503.

[1]Reported in 75 N. W. (2d) 496.

 

*John W. Padden* and *Morris Dickel,* for appellant.
*Olson & Holmquist* and *Rosengren, Rufer & Blatti,* for respondent.

MURPHY, JUSTICE.

Action pursuant to the wrongful death statute by the trustee for the estate of Ralph D. Storbakken against Joseph E. Soderberg to recover damages for the death of the decedent resulting from a collision between decedent's truck and defendant's car. Plaintiff was successful below, and defendant appeals from the order denying his motion for a new trial.

The collision out of which this case arose occurred on September 29, 1953, at about 6:30 p. m. The day was clear, the sunset bright in the west. Decedent was driving a 1949 Ford two-ton truck in an easterly direction on a dirt surface section-line road. The truck had a gross weight of approximately 15,040 pounds including a load of feed. Towing an Auger Elevator as it was, the total length of decedent's truck and elevator was between 41 and 51 feet. The road on which he was traveling was about 20 feet wide with a driving surface of 14 to 18 feet.

Defendant was driving a 1949 mechanically good Kaiser automobile having a gross weight of approximately 3,975 pounds in a general northerly direction on State Aid Road No. 10. No. 10 is a gravel surfaced road about 26 feet wide with a driving surface of approximately 24 feet.

The two roads form a 26-by-20-foot intersection with a somewhat smaller driving area. The entire vicinity is level, the only obstructions to vision being a grove of trees in the southeast corner of the intersection and the setting sun in the west.

The evidence relating to the relative speeds of the two vehicles is vague. An eyewitness, observing from inside her house about a quarter of a mile north-northeast, estimated the truck's speed at approximately 30 miles per hour. An expert witness for plaintiff arrived

at a speed of 7 miles per hour. Defendant, as seen a moment before the impact by the same eyewitness, was going "way over fifty," and "looked * * * like a flash." Defendant testified that he was going 45 to 50 until he slowed down by intermittently applying his brakes when he was 150 to 175 feet from the intersection. At 50 to 55 feet, the point at which he first saw decedent's truck, he claimed to be going about 40 miles per hour and, having applied the brakes hard, only 5 to 10 miles per hour at the time of impact. Plaintiff's engineer adduced that he was traveling at the rate of 37 miles per hour at the time of impact.

The defendant's distance from the intersection when the truck entered is only conjectural, there being no evidence on the point other than defendant's estimate which apparently the jury did not accept. The point of impact has not been established, but it does generally appear to be about 5 feet east of the center line of No. 10. The left front of defendant's car came into contact with the right front of decedent's truck. Following the collision, the truck, which had been traveling east, was tipped on its right side and was facing north by slightly west with the rear of the truck touching the north edge of the road on which it had been traveling and the front on the east edge of No. 10. Decedent was thrown out and crushed under the grain box on the truck. Defendant's car stopped still facing generally north about 16 feet north of the east-west road and 12 feet east of the road on which he had been traveling.

■ The appellant contends the trial court erred in admitting the testimony of a civil engineer with reference to the speed of the vehicles at and prior to the time of impact. The testimony came from one Stanley S. Johnson who is a Bachelor of Science in Civil Engineering, is a consulting engineer, and teaches the subject of "analytical Mechanics of Moving Bodies, commonly referred to as Dynamics" at the University of North Dakota. He explained this subject has to do with "the relationship between accelerations and forces and masses or weights of bodies, * * *." From the facts given to him in the hypothetical question and from certain experiments conducted by him at the scene of the accident, he attempted

to determine the velocity of the vehicles at point of contact and prior thereto by the use of two formulae. The first is based upon the law of conservation of momentum which theoretically determines the speed at which vehicles come together by calculation of factors, including the weight of the colliding vehicles and the distances traveled after impact. He attempted to determine the speed of vehicles at various points immediately prior to the impact by use of the coefficient of friction method as established by tables which purported to "determine the relationship between the weight acting on the surface and the braking effect of the weight as it slides along." The foundation for evidence based upon the latter formula was inadequate, and the expert's testimony with relation to it was so vague and unsubstantial as to deprive it of any material value as evidence. We confine our consideration to the expert's testimony relating to the conservation of momentum theory.

After a brief preliminary examination with reference to the witness' qualifications the following hypothetical question was submitted:

"* * * I ask you to assume these following facts: that an automobile weighing approximately 3435 pounds, with a load of 340 pounds including the driver, is traveling northward on a hard-packed gravel surface roadway of clay and dirt; also assume that this automobile is slowing down for an intersection located approximately a hundred and fifty to a hundred and seventy-five feet north by intermittently applying the brakes until the wheels commence to slide a total of three times; assuming further that after this process the driver of this automobile totally applies his brakes so that the four wheels are sliding a distance of fifty to fifty-five feet to a point in the northeast quarter of the intersection of these roadways where the car and the truck came into collision; assuming also that the weight of the truck with the load was 15,040 pounds and that the truck had been traveling in an easterly direction and had approached the automobile approximately at right angles; assuming also that the left front of the automobile and the right front of the truck collided; and further assuming that after the collision the automobile traveled in

a northerly direction and came to rest in the ditch on the east side of the road, with the rear wheels approximately 16 feet four inches north from the north line of the township road and the front left wheels of the car approximately 12 feet three inches east from the east shoulder of the gravel road on which the car had been traveling; that the left front wheel of the automobile was damaged in the collision; and that the direction of travel of the truck was changed from an easterly direction to a northerly direction and that the truck came to rest on its right side, with the center of the truck approximately 22 feet north from the point of impact. Now, on the basis of those assumed facts which have been given to you previously, Mr. Johnson, have you been able to make, to formulate, to form an opinion as to the speed of the automobile at these various times (A) when the driver of the automobile first commenced to apply the brakes intermittently? Have you formed an opinion as to the speed of the automobile at that point?"

The witness testified that in his opinion the defendant was traveling at a speed of 37 miles per hour at point of impact. He also testified that at that point the decedent was moving at a speed of 7 miles per hour. The appellant contends that the court erred in permitting an answer to the hypothetical question because it assumed facts not in evidence.

Appellant specifically points out that the question assumed the accident occurred in the northeast corner whereas the point of impact was not determined. An examination of the record supports the reasonable inference that the impact occurred in the northeast quarter of the intersection near the center of the east-west center line. A witness who had an opportunity to observe the skid marks of the front two wheels of the decedent's truck placed them north and east of the center of the intersection. The fact that the question used the term "northeast corner" when it might more clearly have referred to the area as the "northeast quarter" was not a misstatement which would mislead the jury.

The appellant contends that the question assumes the center of the truck traveled 22 feet north of the point of impact and since no

point of impact was determined this was not properly a part of the hypothetical question. But this assumption if it were false could not prejudice the defendant for the reason that it would only indicate a slower speed for defendant's car in that it indicated the truck was moved a shorter distance. It is urged that the hypothetical question failed to take into consideration the weight of the Auger which the decedent's truck was towing. Here again the omission would not prejudice the defendant because, if the full weight of both vehicles had been included, the inference would not be favorable to him for the reason that the greater the weight of decedent's vehicle the greater the speed the defendant's car would have had to be in order to move it the number of feet stated in the question.

The appellant further contends that the question was not proper because it failed to establish the speed of the truck as being 30 miles per hour as testified to by one of the plaintiff's witnesses. The expert witness, in basing his opinion upon the law of conservation of momentum, was not required to take this evidence into consideration. He did not assume the speeds of either car. His computations were based upon the behavior of the two cars after impact taking into consideration the respective weights of each. The engineer testified that on the basis of his calculations the ratio between the two vehicles was such that the car would have to be going about 150 miles per hour if he had found the truck's speed to be 30 miles per hour. The engineer's method of computation does not appear in the record but it does appear that, although it was based on the relative position of the vehicles, he did not consider the fact that the car rather than being on the level came to rest in a ditch 4½ feet below the level of the intersection.

An examination of the record indicates there are factors which raise questions as to the accuracy of the results derived from the conservation of momentum principle, but, coupled with the other evidence in the case which will be hereinafter referred to, there was sufficient factual data contained in the hypothetical question to warrant the court in permitting an answer to it. We cannot say the trial court abused its discretion in allowing this opinion evidence of speed

at the time of impact. Aasen v. Aasen, 228 Minn. 1, 36 N. W. (2d) 27; Moeller v. St. Paul City Ry. Co. 218 Minn. 353, 16 N. W. (2d) 289, 156 A. L. R. 371; Johnston v. Selfe, 190 Minn. 269, 251 N. W. 525.[2]

While the foundation for the testimony of the expert should have been more satisfactorily established, the subject of the inquiry was properly one for expert opinion. The facts contained in the question were sufficient to serve as a basis upon which the engineer could give an opinion which would be of help to a jury.[3] The appellant in his brief does not question the qualifications of this particular witness. In determining whether the hypothetical question includes sufficient evidentiary facts for the purpose of the opinion we are guided by 2 Wigmore, Evidence (3 ed.) § 682(b), which states:

"* * * the questioner need not cover in his hypothesis the entire body of testimony put forward on that point by him or by the opponent, but may take as limited a selection as he pleases and obtain an opinion on that basis."

1955 Pocket Supplement adds: "However question should present sufficient facts for expert to give an intelligent opinion." See, also, Independent School Dist. v. A. Hedenberg & Co. Inc. 214 Minn. 82, 7 N. W. (2d) 511. In Albert Lea Ice & Fuel Co. v. United States F. Ins. Co. 239 Minn. 198, 205, 58 N. W. (2d) 614, 618, this court said:

"* * * Where such an opinion is not based upon an adequate factual foundation, it has no evidentiary value and should be rejected. Honer v. Nicholson, 198 Minn. 55, 268 N. W. 852; O'Connor v. Pillsbury Flour Mills Co. 197 Minn. 534, 267 N. W. 507."

---

[2]Johnston v. Selfe, 190 Minn. 269, 251 N. W. 525 (character of damage to the cars held to refute defendant's claim of low speed at the time of collision).

[3]In Woyak v. Konieske, 237 Minn. 213, 54 N. W. (2d) 649, 33 A. L. R. (2d) 1241, we held that the proper test to determine the qualifications of an expert witness is whether the opinion sought will probably aid the trier of the question to determine the truth. The authorities relating to the admissibility of testimony of expert witnesses, qualifications, and sufficiency of foundation are gathered in this case.

The distinction is between inference and conjecture. If the opinion is based on an adequate factual foundation and provides a basis of fair and reasonable inference, it has evidentiary value. While the trial court is allowed considerable discretionary latitude, the question must be examined to determine whether it is based on fact and whether it embodies substantially all of the undisputed facts relating to the subject matter. Smith v. Twin City Motor Bus Co. 228 Minn. 14, 36 N. W. (2d) 22. It is not necessary that the question embody all of the minutiae of the evidence. It is sufficient if it contains such evidentiary facts as are necessary for the expert to form an opinion as to the question presented to him. From an examination of the hypothetical question submitted we conclude, in light of the record before us, the trial court properly permitted the answer. It was for the jury to give it such weight as it was entitled to under proper instructions. Here, the court properly instructed the jury that the opinion of the expert witness was not to be taken as conclusive but merely as evidence arrived at by the application of scientific process and calculations based upon recognized formulae.[4]

Granting the testimony of the expert was clothed in the garb of mathematical accuracy, which might have given it an exaggerated importance in the eyes of the jury, an examination of the record satisfies us that this danger was eliminated by the thorough and searching cross-examination conducted by the counsel for the appellant.

■ The defendant next contends that the decedent was guilty of contributory negligence as a matter of law and points out that the

[4]The Court: "Now in this case there has been received as a part of the evidence the testimony of a Civil Engineer who has testified and given you his opinion upon certain assumed facts accepted by him as true, and upon which he has made computations by applying engineering formulae to these given facts. You are instructed that expert testimony is proper and competent concerning matters of special knowledge, skill or experience upon subjects which are not within the realm of ordinary experiences of mankind, and which require special training, study, skill and experience; but you are not bound to act upon the opinions and testimony of experts to the exclusion of other evidence in the case."

The foregoing instruction is in accord with the decisions of this court. See, 7 Dunnell, Dig. (3 ed.) § 3334, and cases cited therein.

decedent approaching the intersection from the left was required to yield the right-of-way to the defendant who was approaching the intersection from the right; and that since both were approaching the intersection so as to have them arrive at approximately the same time the decedent was in violation of M. S. A. 169.20. He points out that under the evidence the vehicles approached the intersection at approximately the same time and even if the decedent had entered the intersection shortly prior to the defendant he was contributorily negligent as a matter of law under the authorities of Moore v. Kujath, 225 Minn. 107, 29 N. W. (2d) 883, 175 A. L. R. 1007, and Webber v. Seymour, 236 Minn. 10, 51 N. W. (2d) 825.

In defining the status of drivers on intersecting roads § 169.20, subd. 1, provides in part:

"The driver of any vehicle or street car traveling at an unlawful speed shall forfeit any right of way which he might otherwise have hereunder."

We turn therefore to an examination of the assumption on which defendant bases his claim that he was traveling at a lawful rate of speed. Speed restrictions are the subject of § 169.14. Therein it is provided in subd. 2 that, where no special hazard exists, a speed of 60 miles per hour would be lawful during the daytime outside a municipality. But subd. 2 is qualified by subd. 3 which reads:

"**Reduced speed required.** The driver of any vehicle shall, consistent with the requirements, drive at an appropriate reduced speed when approaching and crossing an intersection * * *."

We have before had occasion to examine the applicability of § 169.14, subd. 3, to the forfeiture provision of § 169.20, subd. 1, and, as we stated in Norton v. Nelson, 236 Minn. 237, 244, 53 N. W. (2d) 31, 36:

"The failure to drive at an appropriate reduced speed in compliance with § 169.14, subd. 3, constitutes driving at an *unlawful* speed under § 169.20, subd. 1."

The fatal intersection was, by defendant's admission, essentially a blind crossing. A grove of trees blocked his vision to the east and the setting sun prevented his seeing approaching traffic from the

west, the direction from which decedent approached. Under these conditions, even if the jury accepted defendant's estimate of his own speed, 45 to 50 miles per hour, it could easily have found that to approach a blind intersection at such speed was to approach it at an unlawful speed, resulting in forfeiture of his right-of-way.[5] We said in Dose v. Yager, 231 Minn. 90, 95, 42 N. W. (2d) 420, 424, in reference to the statutory requirement of reduced speed when approaching an intersection:

"Obviously, this admonition applies with double force when the view at the intersection is partly obstructed."

It is, therefore, clear that, even under defendant's view of the evidence, the jury was justified in finding his speed to be unlawful and his right-of-way to be forfeited. If we view the evidence not as it favors defendant but, as is proper, in the light most favorable to the prevailing party, it appears that defendant was actually traveling much faster than the 45 to 50 miles per hour to which he admits.

■ Having forfeited his right-of-way, defendant is no longer in a position to rely on the approximate entrance test of § 169.20, subd. 1, and the cases relating thereto.[6] Instead, the question is simply one of whether the driver of a slower vehicle, hit when approximately half way through an intersection by a high speed vehicle from the intersecting highway, could be found by reasonable men not to be contributorily negligent.

---

[5]In reference to the intersection, the defendant testified:

"Q. Well, now, as you approached this intersection from the hundred and seventy-five foot range how far could you see on the crossroad to the west?

"A. I—you couldn't see anything to the west for the sunset.

"Q. Because of the bright sunset?

"A. Because of the sunset.

"Q. You couldn't see any of that crossroad then to the west?

"A. No.

"Q. No more than you could see to the east side on account of the grove; or maybe not even as far, is that it?

"A. Not near as far. You couldn't really look into that sunset at all."

[6]Moore v. Kujath, 225 Minn. 107, 29 N. W. (2d) 883, 175 A. L. R. 1007; Webber v. Seymour, 236 Minn. 10, 51 N. W. (2d) 825.

444

The jury had few facts to aid in its determination. It could have assumed from the evidence that the decedent, having entered the intersection a sufficient length of time before the defendant, had the right to assume the defendant would drive his car so as to permit the decedent to clear the intersection in safety. Reynolds v. Goetze, 192 Minn. 37, 255 N. W. 249. Defendant estimated his own speed to be 45 to 50 miles per hour at a point 150 to 175 feet, or somewhat over two seconds, south of the intersection, and 5 to 10 miles per hour at the time of impact. Had the jury accepted defendant's speed estimate, it probably would have found that decedent negligently drove into an imminent collision. But the jury was not bound to accept defendant's testimony (Norton v. Nelson, 236 Minn. 237, 53 N. W. [2d] 31; Knuth v. Murphy, 237 Minn. 225, 54 N. W. [2d] 771), and obviously it did not do so. Basing its conclusion on the eye-witness' testimony that defendant was going "way over fifty" and looked "like a flash," the defendant's admission at the time of the accident that he "had a pretty good speed on," and the violent physical results of the collision,[7] the jury apparently dismissed defendant's estimate as inherently incredible. And the higher the speed of defendant, the farther distant he would be from the intersection as decedent entered. The greater the distance the more liable decedent would be to conclude that the distant vehicle would recognize his possession of the intersection and slow sufficiently to allow him to safely cross. We have no way of knowing, of course, what decedent thought to be the situation as he entered the intersection, but he probably did not realize that the sun, which in no way interfered with his vision, prevented defendant from seeing his otherwise clearly visible approach. Nor from the evidence can we ascertain the actual speed of defendant or distance from the intersection of defendant at the time decedent entered. But defendant had the burden of proving decedent's contributory negligence by a fair preponderance of the evidence. Howard v. Marchildon, 228 Minn. 539, 37 N. W. (2d) 833; 13 Dunnell, Dig. (3 ed.) § 7032. With the paucity of evidence,

---

[7]That the physical results are properly considered by the jury in finding speed, see, e.g., Johnston v. Selfe, 190 Minn. 269, 251 N. W. 525; Norton v. Nelson, 236 Minn. 237, 53 N. W. (2d) 31.

which favors the result defendant seeks, we certainly cannot hold, that, as a matter of law, he has sustained his burden.

It is only where evidence of contributory negligence is so clear and conclusive as to leave no room for differences of opinion among reasonable men that a court may enter the province of the jury in determining the issue. Johnson v. Mancilman, 241 Minn. 461, 63 N. W. (2d) 569; Carpenter v. Birkholm, 242 Minn. 379, 65 N. W. (2d) 250. The issue here was for the jury. The jury having found that defendant failed to sustain his burden, the decision on the issue must go against him. Walkup v. Bardsley (8 Cir.) 111 F. (2d) 789.

Affirmed.

MATSON, JUSTICE (concurrring specially).

I concur in the result. I cannot agree, however, that the trial court did not abuse its discretion in overruling the objection to the admission of the expert opinion as to the speed of defendant's automobile as based on the conservation of momentum theory. Generally speaking, all computations under this theory are based upon the movements and the ultimate positions of the two cars after the impact and upon the weights of each vehicle. The expert's opinion was based on assumed facts which were wholly inadequate and could provide only a foundation for speculation. Both vehicles were moving immediately before the impact. The expert witness purported to give an opinion of the speed of one vehicle without knowing the speed of the other, without knowing the condition of the tires on the vehicles, without knowing whether the road surface was wet or dry, and without giving any consideration to the voluntary or involuntary action, or inaction, of the decedent in applying the brakes on the truck.[8] It is difficult to apply the law of physics with any accuracy when the operative facts are rendered uncertain by the element of human intervention. The surrounding facts and circumstances immediately preceding a collision are complicated and are difficult to adequately describe, and this is especially true when they are affected or modified by the uncertain element of human intervention. Where an expert's opinion, involving an application of the laws of physics, rests

---

[8]See, Romann v. Bender, 190 Minn. 419, 424, 252 N. W. 80, 82.

on inadequate or uncertain facts, its basic inaccuracy is likely to mislead the jury and it should not be admitted in evidence. Although the trial court erred in not excluding the expert's opinion, no prejudice resulted since there was ample evidence to sustain a finding that the defendant traveled at an excessive speed.

KNUTSON, JUSTICE (concurring specially).

I concur in the result. I agree with the views of Mr. Justice Matson.

MR. CHIEF JUSTICE DELL took no part in the consideration or decision of this case.

---

[1]Reported in 75 N. W. (2d) 470.