BERTHA GRAPENTIN AND ANOTHER v.
HOWARD E. HARVEY AND ANOTHER.

114 N. W. (2d) 578.

March 23, 1962—No. 38,440.

*Meagher, Geer, Markham & Anderson, O. C. Adamson II,* and *M. J. Coyne,* for appellants.

*Farnes & Skaar,* for respondents.

FRANK T. GALLAGHER, JUSTICE.

Appeal from an order of the district court which denied defendants' motion for a new trial.

This case involves an automobile accident which occurred about noon on March 3, 1959, at a "Y" intersection of Excelsior Boulevard and Quentin Avenue in St. Louis Park, Minnesota. Excelsior Boulevard runs generally east and west at that point, and Quentin Avenue approaches from the southwest and terminates at Excelsior Boulevard.

Mr. and Mrs. Grapentin, plaintiffs herein, were traveling west on Excelsior Boulevard. Mr. Grapentin, driving his 1952 Studebaker, made a left turn onto Quentin Avenue. Mrs. Harvey, one of the defendants, was driving a 1955 Ford east on Excelsior Boulevard when the front of her car struck the side of the Grapentin vehicle, injuring Mrs. Grapentin.

Plaintiffs conceded that Mrs. Harvey had the right-of-way in this situation, but claimed that she forfeited that right-of-way because of excessive speed.[1] The speed limit on this part of Excelsior Boulevard was 35 miles per hour. The only eyewitness evidence as to the speed of the Harvey vehicle was that of Mrs. Harvey herself and of one Harry Swanson, who was driving behind the Grapentin car; both of these witnesses testified that Mrs. Harvey was driving at about 30 miles per hour. The plaintiffs did not observe the speed of her car.

As proof that Mrs. Harvey was traveling at a rate in excess of the legal limit, plaintiffs relied upon the skid marks left by the Harvey vehicle prior to the point of the impact. Edward Thompson, a policeman who was called to the scene of the accident, testified that he had measured skid marks of 51 feet, 4 inches. Plaintiffs then called Adolph O. Lee, an assistant professor of mechanical engineering at the University of Minnesota and a registered professional engineer, as an

---

[1] Minn. St. 169.20; Anderson v. Mid-Motors, Inc. 256 Minn. 157, 98 N. W. (2d) 188.

expert witness. In response to a hypothetical question the witness stated, among other things, that the speed of the car driven by Mrs. Harvey must have been in excess of 35 miles per hour.

The jury returned a five-sixths verdict in favor of the plaintiffs in the total amount of $13,000. Defendants moved for a new trial, which was denied, whereupon they appealed to this court.

The defendants raise the following legal issues on appeal: (1) May an expert witness give an opinion relative to the speed of an automobile in response to a hypothetical question which they claim inaccurately stated the length of skid marks left by their car, contained insufficient data concerning the surface of the street, and included matters not in evidence? (2) May the trial court on its own motion recall a witness and cross-examine him by what defendants claim were leading, suggestive, and double questions for the purpose of laying a foundation for previous opinion testimony where, according to their claim, such cross-examination leads the witness into making impossible answers and unexplained self-contradictions? The trial court held in the affirmative in both instances.

The hypothetical question submitted to the witness was as follows:

"Q. Now, then, I want you to assume, Mr. Lee, that you have a street which is made of concrete, a regular concrete highway, Excelsior Boulevard. Incidentally, are you familiar with Excelsior Boulevard?

"A. Yes, I am.

"Q. And when was the last time that you actually saw Excelsior Boulevard, to drive over it?

"A. I think it was approximately a month ago.

"Q. All right. I want you to assume that an automobile was traveling generally east on Excelsior Boulevard and that as it travels—incidentally, it's a 1955 Ford 4-door automobile. Assume that it has good brakes; assume that it has good tires; assume that the operator of the vehicle applies the brakes of the vehicle and lays down from the front wheels skid marks of 51 feet, 4 inches, that are black skid marks, imprinted onto the cement street; assume further that there is a shadow —are you familiar with a shadow?

"A. Yes.

"Q. (Continuing)—a shadow from the wheels at least two feet prior to the time the black skid marks show up; assume further that the skid marks from the rear wheels of this vehicle began approximately at the same point that the skid marks from the front wheels of this vehicle began. Now, assume those facts to be true * * *. Can you give us an opinion based on your education, training, experiments and background as to the speed that this '55 Ford was traveling at the time its brakes were applied?"

At that point counsel for the defendants was granted the opportunity of questioning the witness for the purpose of laying a foundation for an objection. After such questioning, he objected to the hypothetical question on the grounds that it assumed facts not in evidence and that Professor Lee had disqualified himself from answering the hypothetical question by his testimony in response to defendants' cross-examination.

Counsel for defendants also stated to the court specific points in the hypothetical question for which he thought there had been no adequate foundation laid; for example, that it assumed an ordinary or regular concrete street without any affirmative proof in the record as to what loose materials or how much of such materials there may have been on the street at the time of the accident or immediately afterwards; also that the hypothetical included a statement that there were 51 feet, 4 inches, of front-wheel skid marks, whereas, defendants claimed, the proof was not that definite. After calling the attention of the court to further claimed discrepancies, counsel for defendants stated that there was no propriety in letting in the expert testimony. The court stated that the objections went to the weight of the testimony and overruled them.

The witness Lee was then asked if he had an opinion, based on his experience and training, as to the speed of the Ford at the time its brakes were first applied. He replied that he had and then stated:

"A. My opinion is that provided the vehicle came to a stop as a result of producing those skid marks, it would be traveling approximately 35 miles per hour.

"Q. All right.

"A. If it did not come to a stop as a result of producing those skid marks, his speed was in excess of 35 miles per hour."

A hypothetical question must embody substantially all the undisputed facts relating to the subject upon which the opinion of the witness is asked, and should contain all material facts relevant thereto. Harju v. Allen, 146 Minn. 23, 177 N. W. 1015. It should include substantially all of the facts supported by competent evidence, but minor inaccuracies may be overlooked under certain conditions. The trial judge should be given discretion to determine how far counsel can and must properly limit his questions and how far the jury may be trusted, with the aid of argument, to discover the conditional nature of the opinion. Aasen v. Aasen, 228 Minn. 1, 36 N. W. (2d) 27. See, also, Smith v. Twin City Motor Bus Co. 228 Minn. 14, 36 N. W. (2d) 22. The hypothetical question need not contain all of the small or unimportant details of the evidence, but must contain such evidentiary facts as are necessary for the expert to form an opinion as to the question presented to him. Storbakken v. Soderberg, 246 Minn. 434, 441, 75 N. W. (2d) 496, 501.

Secondly, a hypothetical question cannot contain extra facts which are not in evidence. State v. Hanley, 34 Minn. 430, 26 N. W. 397. It need not be confined to the undisputed facts, or to the facts "proved," 2 Wigmore, Evidence (3 ed.) § 682(2)(c); but at the same time there must be some clear support in the record for the assumptions made. Hiber v. City of St. Paul, 219 Minn. 87, 16 N. W. (2d) 878.

In general a witness qualified as an expert may give his opinion, based upon the length of skid marks, as to the speed of a motor vehicle involved in an accident. Annotation, 23 A. L. R. (2d) 112, 141. However, the speed can be determined accurately only if the exact length of the marks, and the type of the road surface, are known. See, Judge and Prosecutor in Traffic Court, chapter 10 (Baker, *Skidmarks as Evidence of Speed in Accident Cases*).[2]

---

[2]Judge and Prosecutor in Traffic Court is a symposium published by the American Bar Association and the Traffic Institute, Northwestern University; James S. Baker is director of research at the Traffic Institute.

In this case the hypothetical question assumed as facts, among other things, a "regular concrete highway," "front wheel skid marks" of 51 feet, 4 inches, and skid marks from all four wheels which began at approximately the same point. The first assumption pertains to the type of road surface, and the second two assumptions pertain to the distance the car skidded, both highly important factors.

It is our opinion that the hypothetical question was improper in both respects. First, it did not contain sufficient evidentiary facts regarding the condition of the road. From the engineering formula[3] given in Judge and Prosecutor in Traffic Court, p. 192, it would appear that a 50-foot skid mark would indicate speed of about 35 miles per hour on new concrete, but a speed of only about 30 miles per hour on old concrete. That author states that the most accurate way to determine the quality of the concrete is to take a test skid on it; without such a test an expert's estimate of "drag factor" can be accurate only within broad limits. Judge and Prosecutor in Traffic Court, pp. 189, 190. With this much variance depending upon the type of concrete—to say nothing of the presence or absence of gravel—the mere assumption of a "regular concrete highway" seems to us too vague to permit an expert opinion on speed, under the circumstances here.

Secondly, the hypothetical question was improper because it assumed facts regarding the distance the car skidded which are not adequately supported by the evidence. The evidence relating to the length of the skid marks was provided by the policeman, Edward Thompson, as follows:

"Q. Before you sit down, did you also observe skid marks leading up to that point of impact?

"A. Yes, I did.

"Q. And did you measure the skid marks?

"A. Yes.

---

[3] This formula is: "Speed equals 5.5 times the square root of the product of distance times drag factor." "Drag factor," or the coefficient of friction, depends upon the type of road surface, varying from around .40 for loose gravel and .60 for old concrete to .80 or more for new concrete and asphalt.

"Q. How many of them were there?

"A. 51 feet, 4 inches.

"Q. And how many tracks of skid marks were there?

"A. There was four of them.

"Q. Which of the four did you measure, do you recall?

"A. Measured them—well, they were all approximately the same length.

\*　\*　\*　\*　\*

"Q. Could you determine if the rear wheels of the vehicle, whose skid marks you measured, began leaving skid marks at or about the same time as the front wheels of that vehicle?

"A. Yes, they did."

Defendants contend that the officer meant to testify that when the four-wheel brakes were applied all four wheels began skidding, so that the first few feet of marks were left solely by the rear wheels, and the front wheels left marks shorter than 51 feet, 4 inches.

However, on cross-examination by defendants the witness seemed to contradict that theory:

"Q. Well, ordinarily, Officer, it would be true, wouldn't it, on any car that has four-wheel brakes, that when you put on the brakes the front and rear ones go on at the same time, isn't that true?

"A. Yes, that is true.

"Q. And ordinarily the rear wheel would be the wheel that would make the skid mark first that was located farthest from the point of impact?

"A. Not necessarily. The car, when its brakes go on, the front goes down. The back wheels come up and they won't leave a skid mark.

\*　\*　\*　\*　\*

"Q. And then the rear wheels, according to your theory, should never lay skids, is that right?

"A. No. The car will settle down and then the back wheels will grab."

This testimony, according to the claims of plaintiffs, would imply that the front wheels alone left skid marks of 51 feet, 4 inches, to the

point of impact; this assumption was therefore made in the hypothetical question to the expert witness.

The trial court apparently recognized that the above evidence was too ambiguous to serve as the foundation for an expert opinion. The court therefore recalled the policeman to the stand after Lee had testified. The following transpired:

"Q. [By the court] Mr. Thompson, I am a little bit uncertain as to what your testimony was as it related to the skidding of the Ford automobile.

"A. In forward motion, you mean?

"Q. Yes.

"A. Prior to the impact?

"Q. Yes.

"A. There was 51 feet, 4 inches of skid mark prior to the impact.

\* \* \* \* \*

"Q. And did the skid marks start at the same point, all four of them start at the same point?

"A. Approximately the same point, yes.

"Q. I am just trying to picture this in my mind. And then is it your testimony that the skid marks for the front wheels were 51 feet and 4 inches?

"A. Right.

"Q. And what was the length of the skid marks for the rear wheels?

"A. They would be less whatever the car distance is. That is where they started to skid around sideways.

\* \* \* \* \*

"Q. Well, what is your explanation, if you have one, for the difference in the length of the skid marks of the front wheels and the rear wheels?

"A. On a braking of a car the—the front of the car will go down and your front wheels will lay rubber or burn into the pavement before the back wheels will. Therefore, the back ones could go to the front wheels before they start to burn into the rubber—into the pavement with the rubber.

"The Court: Well, that is all I have."

Plaintiff made no attempt to substantiate the policeman's theory as to the possibility of the rear wheels lifting up. Even the testimony elicited by the somewhat leading questions of the trial court did not entirely succeed in resolving the ambiguities in the policeman's testimony in this respect, for it is still unclear what the policeman meant when he stated previously that all four wheel marks were approximately the same length. Judge and Prosecutor in Traffic Court, p. 191, states that generally the overall length of the skid marks includes the length of the car; that only the sliding distance can be used in determining speed; and that one must "deduct the wheel base of the car from the total skid length, because the rear wheels start leaving skidmarks farther back than the front ones."

It is our opinion that by questioning Thompson without further examining Lee the trial court could have created further confusion so as to result in prejudice to the defendants. We are not prepared to say under the circumstances here that the questioning by the trial court constituted reversible error in itself. The trial court has some discretion in such matters and may recall a witness if it does so with the intention of clearing up confusion. However, it is our impression that under the record here, where plaintiffs were obviously relying on the testimony of Lee to supply the clinching evidence as to the speed of defendants' car, the confusion in the evidence made the assumptions included in the hypothetical question unwarranted and resulted in prejudice to the defendants. These are not matters which go merely to the weight of the expert's testimony; if the hypothetical question is faulty, the answer thereto has no weight whatsoever and should be excluded. Wittenberg v. Onsgard, 78 Minn. 342, 81 N. W. 14, 47 L. R. A. 141; 2 Wigmore, Evidence (3 ed.) § 682.

Reversed and new trial granted.

Mr. Justice Rogosheske, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.