## F. E. JABLINSKE v. H. H. ECKSTROM AND ANOTHER.

76 N. W. (2d) 654.

April 13, 1956—No. 36,792.

*Seifert, Johnson & Hand,* for appellants.
*Erickson & Zierke,* for respondent.

Dell, Chief Justice.

This action arises out of an intersection collision between a truck owned and operated by the plaintiff and a school bus owned by the defendant H. H. Eckstrom and operated by his nephew, the defendant Ivan Eckstrom. There was a verdict for the plaintiff, and defendants appeal from an order denying their alternative motion for judgment notwithstanding the verdict or a new trial.

We, of course, consider the evidence in the light most favorable to the verdict. Plaintiff, 58 years of age, on October 6, 1954, was driving his truck loaded with gravel in a southerly direction on County Aid Road No. 13. The combined weight of the truck and its load was between 22,000 and 23,000 pounds. Defendant Ivan Eckstrom, then 18, was driving his uncle's school bus in a westerly direction on County Aid Road No. 19. These roads intersect at right angles. No stop signs were located at the intersection. Both were

gravel roads and although it had rained slightly the day before, they were dry at the time of the accident which occurred at approximately 7 a. m. Each road was about 22 feet in width measuring from "grass line to grass line." There was a slight incline in both roads as they approached the intersection. The intersection, however, was clear and unobstructed. The topography was such that each motorist at all times, within a half mile of the intersection, under normal conditions, would have a clear view along the intersecting road for a distance of half a mile from the intersection. At the time of the accident it was cold and clear and the sun was shining brightly from the east. Both drivers were familiar with the intersection. The truck and bus were both in good mechanical condition. The vehicles collided slightly west of the center of the road in the northwest quarter of the intersection.

Defendant Ivan Eckstrom testified that as he approached the intersection he was driving at a speed of approximately 30 miles per hour; that he first noticed plaintiff's truck when he was about 50 feet from the intersection, and he estimated that the truck was then approximately 100 feet north of the intersection; that he increased his speed in an effort to pass through the intersection ahead of the truck believing that he would not be able to stop in time to avoid a collision; that traveling at the rate of 30 miles per hour it would take approximately 75 feet to bring the bus to a stop. Mrs. Clarence Johnson, the only passenger in the bus, testified that immediately after the accident Ivan said to her "I goosed it to avoid him hitting us."

Plaintiff testified that as he drove south toward the intersection he "could see clear down the road, [but he] couldn't see any traffic coming"; that the bright sun shining from the east made it difficult to see when he looked in that direction; that "in a view you could see better when you were off further than when you got real close" to the intersection. Plaintiff's average speed from the time he left the gravel pit was approximately 30 to 35 miles per hour. As he approached the intersection, he slowed down to approximately 20 to 25 miles per hour. When he was 30 or 40 rods north of the inter-

section, he looked to the east but saw no vehicle approaching. When he was 20 to 30 feet from the intersection, he again looked to the east but due to the brightness of the sun he still could see no vehicle coming. When about 10 to 15 feet from the intersection he saw the bus from the first time as it appeared directly in front of him in the intersection. He stepped on his brakes and swerved sharply to the left in an effort to avoid the accident. However, the truck struck the 28-foot bus near its rear right wheel approximatedly 2½ feet from the back end of the bus. At the time of the impact plaintiff was traveling at an estimated speed of 5 to 10 miles per hour. Approximately 18 feet of the bus was out and west of the intersection at the time of the collision. The impact turned the truck over and it came to rest on its top facing west in the west ditch approximately 150 feet south of the intersection. The bus evidently rolled over and stopped west of the intersection on the south side of the road with its front end against a fence and with its rear end out on the road. Both vehicles suffered extensive damage. One witness, Vernard Nordby, who arrived on the scene shortly after the collision, testified that Ivan Eckstrom admitted at that time that the accident was his fault. Ivan denies making the admission.

Plaintiff instituted this action to recover damages for personal injuries sustained by him and for the damage to his truck. Defendant H. H. Eckstrom counterclaimed to recover for the damage to his bus and for loss of income and profits resulting from his inability to use the same. At the close of the testimony, defendants moved for a directed verdict on the ground that plaintiff was guilty of contributory negligence as a matter of law but the motion was denied. The jury returned a verdict for the plaintiff in the sum of $5,000, and upon denial of defendants' alternative motion for judgment notwithstanding the verdict or a new trial, defendants appeal.

■ No question is raised as to defendants' negligence nor is it claimed that the verdict is excessive. Defendants contend, however, that the plaintiff, as a matter of law, was guilty of contributory negligence barring his recovery. Ordinarily the issue of contribu-

tory negligence is for the jury.[1] Its determination of the issue must stand unless manifestly and palpably contrary to the evidence viewed as a whole and in the light most favorable to the verdict.[2] It is only in those cases where the evidence is so clear and conclusive as to leave no room for differences of opinion amongst reasonable men that the issue of contributory negligence becomes one of law to be decided by the court.[3]

In support of their contention defendants point to the testimony of the plaintiff indicating that in approaching this intersection he relied to some extent on the statutory "right-of-way." It is true that the right-of-way rule is not an unyielding one. The rule does not invariably give the driver on the right the unlimited privilege of crossing. While plaintiff had the right-of-way, that did not relieve him of the duty of exercising due care commensurate with the conditions then existing as he approached the intersection.[4] However, this is not a case where we should hold, as defendants contend, that plaintiff recklessly and without exercising the least degree of caution entered an intersection relying blindly on his supposed right-of-way. Nor is this a case like Dreyer v. Otter Tail Power Co. 205 Minn. 286, 285 N. W. 707, 287 N. W. 13, where this court held that the plaintiff was guilty of contributory negligence as a matter of law for "heedlessly" entering an intersection of well-traveled highways without knowing that he was approaching a crossroad and thus without exercising the standard of care required in such a situation. Moreover, this court has "expressly reject[ed] the policy of applying arbitrary standards of behavior amounting in effect to rules of law

[1]Jeddeloh v. Hockenhull, 219 Minn. 541, 18 N. W. (2d) 582; Schleuder v. Soltow, 239 Minn. 453, 59 N. W. (2d) 320; Johnson v. Mancilman, 241 Minn. 461, 63 N. W. (2d) 569.

[2]Rivera v. Mandsager, 228 Minn. 227, 36 N. W. (2d) 700; 1 Dunnell, Dig. (3 ed.) § 415.

[3]Ryan v. Griffin, 241 Minn. 91, 62 N. W. (2d) 504; Johnson v. Mancilman, 241 Minn. 461, 63 N. W. (2d) 569.

[4]Jeddeloh v. Hockenhull, 219 Minn. 541, 18 N. W. (2d) 582; Webber v. Seymour, 236 Minn. 10, 51 N. W. (2d) 825; Tegels v. Tegels, 177 Minn. 222, 225 N. W. 85; Norton v. Nelson, 236 Minn. 237, 53 N. W. (2d) 31; Krinke v. Gramer, 187 Minn. 595, 246 N. W. 376.

to all cases without regard to surrounding circumstances." Ranum v. Swenson, 220 Minn. 170, 174, 19 N. W. (2d) 327, 330. In the instant case, from the evidence before it, the jury was justified in finding: That as the plaintiff approached the intersection he looked to the east at various intervals but saw no vehicles coming; that the closer he came to the intersection the more difficult it was to see to his left because he was looking directly into the sun shining from the east; and that he reduced his speed to approximately 20 to 25 miles per hour as he approached the intersection. Whether or not his conduct on the record here measured up to that of an ordinarily prudent person under similar circumstances should not be decided as a matter of law.

The case of Johnson v. Mancilman, 241 Minn. 461, 63 N. W. (2d) 569, is somewhat analogous to the instant case in that there visibility was also poor because of falling snow blowing in gusts. The plaintiff in that case testified that at no time could he see in any direction beyond 40 feet; that he approached the intersection at a speed of about 10 to 12 miles per hour; and that he looked to the left and right before starting to cross the intersection. There was a collision between plaintiff's automobile and an automobile that entered the intersection from his right. In holding that the plaintiff was not guilty of contributory negligence as a matter of law, we stated (241 Minn. 464, 63 N. W. [2d] 571):

"It has been adopted and followed as a general rule by this court that, if a plaintiff makes reasonable observation both to the left and right before crossing an intersection where vision may have been either distracted or obscured due to conditions and circumstances not ordinarily encountered, he is not guilty of contributory negligence as a matter of law for proceeding across the intersection, and the question whether he should have taken additional safeguards or made additional observations before crossing is ordinarily one for jury determination."

While generally each case is controlled by its own facts, in other cases, under somewhat similar conditions, we have held that plain-

tiff's failure to discover what, under normal visibility, would have been seen was not contributory negligence as a matter of law.[5]

Defendants argue that here plaintiff did not "effectively look" until he was too close to the intersection. While plaintiff earlier looked to his left, he did not actually see the defendants' bus until it suddenly appeared 10 or 15 feet directly in front of him in the intersection. From the evidence a jury could reasonably find that the failure of plaintiff to see the bus was because he was looking into the sun. Plaintiff testified that if he were traveling at 20 or 30 miles an hour in his loaded truck on a graveled road, in his estimation, he would have been able to bring the truck to a stop within a distance of 20 to 25 feet. A strict application of these estimated figures admittedly would mean that plaintiff could not have stopped in time to avoid a collision with a vehicle then in the intersection and thus is a factor to be considered in determining whether plaintiff was guilty of negligence.[6] However, we have repeatedly held that estimates of speed, distance, and time, especially if made by the occupants of moving vehicles, involve varying factors and are always subject to human error. Arguments based upon such estimates, while having considerable probative force before the trier of fact, have little force before an appellate court passing on an issue that has

---

[5]See, Carlson v. Stork, 188 Minn. 204, 246 N. W. 746 (dust affected plaintiff's visibility; held that it was a jury question as to whether plaintiff was guilty of contributory negligence in failing to discover the approach of the truck in time to avoid a collision) ; Coffman v. Kummer, 179 Minn. 120, 228 N. W. 751 (snowstorm greatly limited visibility; held question of contributory negligence was for jury) ; Golden v. Geyer, 195 Minn. 354, 356, 263 N. W. 103, 104, where the court stated: "It is for the jury to determine whether fog or other conditions such as snow and rain so interfere with vision that it would be negligence for a driver to proceed upon a highway at all; and, if he does proceed under diminished visibility, what speed would constitute negligence"; Johnston v. Jordan, 193 Minn. 298, 258 N. W. 433 (plaintiff had right-of-way but view to left was obstructed by a building and trees; plaintiff approached intersection at a rate of speed of from 15 to 20 miles per hour; held contributory negligence was a jury issue). See, also, Storbakken v. Soderberg, 246 Minn. 434, 75 N. W. (2d) 496.

[6]Delyea v. Goossen, 226 Minn. 91, 32 N. W. (2d) 179; Olson v. Duluth, M. & I. R. Ry. Co. 213 Minn. 106, 5 N. W. (2d) 492.

already been determined adversely to the appellant.[7] Especially in automobile collision cases, we have adopted a policy of hesitation when contributory negligence as a matter of law is attempted to be established on estimates.[8] Thus the estimated figures in this case are by no means controlling on the question of whether the plaintiff was in the exercise of "due care."

Defendants rely upon the case of Kopp v. Ryckman, 238 Minn. 342, 348, 57 N. W. (2d) 31, 34, in which this court stated: "A person is guilty of contributory negligence as a matter of law if he knows of the existence of a condition which is dangerous to him and then acts without using ordinary care to avoid injury from such danger." While we fully adhere to this standard of care, it should be noted that the facts in that case were entirely dissimilar from the facts in the case now before us. On the facts of the instant case we conclude that whether the plaintiff was guilty of contributory negligence presented a fact issue for the jury.

■ At the close of the testimony both parties submitted requested instructions to the court. One of the instructions which defendant requested was as follows:

"The driver of any vehicle traveling at an unlawful speed shall forfeit any right-of-way which he might otherwise have hereunder. M. S. A. 169.20, Sub. 1."

Counsel for the parties were advised in chambers that the instruction would be given and a notation to that effect was made of record by the court. The instruction was a proper one to be given to the jury since, if the plaintiff had failed to drive at an appropriate reduced speed when approaching and crossing the intersection in com-

[7]Schleuder v. Soltow, 239 Minn. 453, 59 N. W. (2d) 320; Ranum v. Swenson, 220 Minn. 170, 19 N. W. (2d) 327; Ryan v. Griffin, 241 Minn. 91, 62 N. W. (2d) 504; Johnston v. Jordan, 193 Minn. 298, 258 N. W. 433; Martin v. Reibel, 227 Minn. 106, 34 N. W. (2d) 290; Mattfeld v. Nester, 226 Minn. 106, 32 N. W. (2d) 291, 3 A. L. R. (2d) 909.

[8]Ranum v. Swenson, 220 Minn. 170, 19 N. W. (2d) 327.

pliance with M. S. A. 169.14, subd. 3, that would constitute driving at an unlawful speed under § 169.20, subd. 1.[9]

A second instruction, containing the foregoing request but couched in different language and referring to some of the evidence introduced at the trial, was refused by the court and we think properly so since it would have had a tendency to overemphasize defendants' side of the case. Defendants, on the oral argument, conceded that, if the first instruction had been given, there would have been no necessity to give the second.

Even though the court stated that the defendants' first requested instruction would be given, that was not done. It is clear from the record, however, that the failure to do so was an oversight on the part of the court. At the completion of the charge the court inquired of the parties, in the presence of the jury, whether there were any suggestions or omissions in the charge. Defendants remained silent and did not call the court's attention to its inadvertence in failing to give defendants' first requested instruction and the jury retired for its deliberations without the benefit of the instruction. It was the duty of the defendants to call the court's attention to the oversight. A party may not remain silent where there is an unintentional omission in the charge and thereafter assign as error the failure of the court to give the omitted instruction. In view of what transpired, defendants have precluded themselves from asserting such omission as a ground for a new trial.[10]

■ The remaining assignments of error deal with rulings on the admission of evidence. The rulings complained of pertain to the admissibility of evidence concerning plaintiff's damages. Since the amount of the verdict is not questioned, the correctness of the rulings is immaterial to our decision in this case.

Affirmed.

---

[9]Norton v. Nelson, 236 Minn. 237, 53 N. W. (2d) 31; Storbakken v. Soderberg, 246 Minn. 434, 75 N. W. (2d) 496.

[10]Rule 51, Rules of Civil Procedure; Storey v. Weinberg, 226 Minn. 48, 31 N. W. (2d) 912.