**Marvin D. ZAHN, Plaintiff,**

v.

**FORD MOTOR COMPANY, a corporation, Defendant and Third Party Plaintiff (Clarence A. Dailey, Third Party Defendant).**

**No. 5–57 Civ. 7.**

United States District Court
D. Minnesota,
Fifth Division.

Aug. 13, 1958.

Ryan, Ryan & Ebert, by C. A. Ryan, Brainerd, Minn., for plaintiff.

Mahoney & Mahoney, by G. P. Mahoney, Minneapolis, Minn., for defendant and third party plaintiff.

Rosengren, Rufer & Blatti, by Robert O. Blatti, Fergus Falls, Minn., for third party defendant.

DONOVAN, District Judge.

In this diversity case plaintiff at trial had a verdict in the sum of $26,350 against the Ford Motor Company (hereinafter referred to as Ford). The third party defendant, Clarence A. Dailey (hereinafter referred to as Dailey), was exonerated from liability to Ford by special verdict.

Ford has moved in the alternative for judgment in its favor, or for a new trial, upon the following grounds:

1. The verdict is contrary to the evidence;

2. The verdict is contrary to the law;

3. Misconduct of counsel; and

4. Excessive damages.

The instant case was tried to court and jury at the May 1958 general term. The motions were orally argued by counsel at the June 6, 1958, special term. Briefs (the last of which was received July 17, 1958) by all parties followed in due course and the points and authorities relied on are before the court and will be discussed under the four heads above relied upon by movant.

*1. Sufficiency of the Evidence.*

Plaintiff, 27 years of age and a guest in Dailey's Ford automobile, met with

personal injury on April 28, 1956, causing loss of sight in his right eye. The facts are simply to the effect that as plaintiff sat to the right of Dailey, between two and three o'clock on a clear afternoon, with Dailey driving at a rate of 45 to 50 miles per hour on a tarvia surfaced highway (Highway 218) in Minnesota, a car was observed approaching on a cross road to the left of 218 and towards a stop sign (there being stop signs on both sides of 218 against cross traffic). Visibility was good. Dailey saw the car approaching the arterial highway from his left and assumed the driver of the car would stop as required.[1]

The stranger drove through the stop sign with the result that when Dailey applied his brakes and swung his car to avoid what seemed to be an imminent collision, plaintiff, who at the time was bending forward to deposit the ash of a cigarette in the receptacle provided therefor[2], was thrown to the side and forward, striking the ash tray with such force as to knock it off its base to the floor of the car. Dailey testified the ash tray was examined by him following the accident and then for the first time he discovered "a jagged edge on the right side."

Plaintiff was taken by Dailey to a hospital in Brainerd "instead of trying to catch this other car", said Dailey. Upon rendering first aid at the hospital, the attending physician referred plaintiff to Dr. W. T. Wenner, a qualified medical doctor specializing in matters of the eye. Plaintiff was examined by Dr. Wenner at the hospital in St. Cloud, Minnesota, on the day of the accident,

and Dr. Wenner describes what he observed and what followed in these words:

"The right eye was markedly injected, painful and tearing—of course the eye had a patch which I removed. * * * Yes, he had a laceration of the cornea of the eye —the cornea is the window of the eye—from 3:00 o'clock right across to 9:00 o'clock—so that the laceration extended the entire width of the cornea. It was a penetrating wound and it was gaping and the part of the iris which is the colored part of the eye was in the wound and so was some of the lens material and vitreous. The anterior chamber was collapsed, evacuated, the aqueous being entirely gone. He did have a light perception and surgery was done later on that afternoon or early evening, I forget just when it was, and of course he was given antibiotics, tetanus and anti-tetanus to prevent infection setting in. * * *. The incarcerated portion of the iris was removed, the cornea was sutured and the conjunctival portion string flap was made * * to save the eye.

"When the eye was injured, the iris was injured and as the aqueous escaped it carried the iris forward and it was caught in the collapsed wound. * * * [The wound] traversed the cornea, anterior chamber and onto the lens of the eye. * *

"I found a penetrated wound of the cornea. The object that lacerated the cornea also extended onto and injured the lens of the eye. * *

1. Olson v. Anderson, 224 Minn. 216, 28 N.W.2d 66.
Dailey testified at trial:
"I seen him coming, and I figured there was a stop sign there and he would stop. And the next thing I knew, he was right in front of me, and automatically I slammed the brakes on. I didn't hit the car, but I don't know how I missed him. * * * It continued on down the road."

2. Plaintiff testified at trial:
"Well, we were driving down this highway and talking about nothing in general, and I reached over to put some ashes in the ash tray of Mr. Dailey's car and the cigaret fell out of my hand, and I was in the act of reaching for it when everything happened, when the brakes went on and I slammed forward into the dashboard of the car."

He left the hospital on the 5th of May the first time. * * *

"The purpose of the sewing, of suturing the cornea wound was to avoid the continuous escape of aqueous, the aqueous is continuously being formed in an eye and continually being evacuated and the suturing was made to avoid the escape of this aqueous and also to cover the wound, close the wound, and the flap did not retract until the day prior to his leaving the hospital, at which time the eye was still markedly injected. Eye was red. He had a traumatic cataract and he was sent home with drops to use in the eye and he was back again in the hospital on the 1st of June until the 3rd of June, back again June 22 to the 24th of June and back from the 29th of June until the 8th of July due to complications. * *. Inflammation and hemorrhage—the last time he was in the hospital with a hemorrhage into the anterior chamber. * * *. When the iris—the iris is the most vascular portion of the eye—and when that was torn of course it opened up blood vessels and following an iris tear you are always confronted with hemorrhage. * * *

"I saw Mr. Zahn after that—the last time I saw him was in November of '56. * * * The eye was blind, he had no light perception and the eye was starting to shrink and he was developing what we call phthisis bulbi. * * *

"He has a blind eye, shrunken eye, and it should be removed. * *. He has total loss of vision of that eye; he has loss of depth perception; he has loss of peripheral field. * * * He has only one eye. When people lose an eye at the age of Mr. Zahn that depth perception is difficult to acquire. We have children who are born with vision of one eye, but by practice and adjustment they do acquire some depth perception, but if you lose vision in one eye in adult life, it is more difficult to acquire depth perception.

" * * * [The disability] is estimated loss of one eye resulting in loss of ⅙ of the field of vision so that Mr. Zahn has loss of ⅙ of his field of vision. * * *

"The injury was caused by a sharp object striking the eye. * * *"

At the time of the accident plaintiff's employment was that of "an equipment operator on construction projects, highway construction and power lines, * * running cats, bulldozers and heavy trucks."

That Ford manufactured and sold to Dailey the automobile in which plaintiff was riding is not disputed. Ford contends "that Dailey's negligence was the sole proximate cause of the injury to Zahn's eye."[3]

▮▮▮ Confronted with the facts of the instant case, the question of causation was one wholly within the province of the jury. In this respect the court cannot substitute itself for the triers of the facts, despite persuasiveness of counsel in attempting to allocate blame and proximate cause to the negligence of Dailey alone. The choice, as between conflicting versions as to the cause of an accident, and to the inferences to be drawn from the facts of the case are questions for the jury.[4] It must be assumed that the jury resolved all facts in controversy in favor of the prevailing parties.[5] Ford's challenge to the sufficiency of the evidence and the weight thereof is not supported by the record.

3. Counsel cites: Ballweber v. Kleist, 248 Minn. 102, 78 N.W.2d 671; Jablinske v. Eckstrom, 247 Minn. 140, 76 N.W.2d 654; Webber v. Seymour, 236 Minn. 10, 51 N.W.2d 825; Tschida v. Dorle, 235 Minn. 461, 51 N.W.2d 561.

4. Dealer's Transport Co. v. Werner Transport Co., 8 Cir., 203 F.2d 549, 552; Thieman v. Johnson, 8 Cir., 257 F.2d 129.

5. Railway Express Agency v. Mackay, 8 Cir., 181 F.2d 257, 259, 19 A.L.R.2d 1248.

In my opinion the evidence is sufficient to support the verdicts.

### 2. Does the Verdict Find Support in the Law?

■■ This being a diversity case, the substantive law of Minnesota is applicable.[6] Ford sold the automobile in question to Dailey. Plaintiff must be characterized as a stranger to the contract of sale, and hence, the only action plaintiff can maintain is one ex delicto.[7] This was the theory of the plaintiff by pleading, proof and trial, and the court charged the jury in that respect as follows:

"Plaintiff, Marvin D. Zahn, is suing defendant Ford Motor Company, a corporation, to recover damages for personal injuries, expense incident thereto, and for disability arising therefrom, which he attributes to the negligence of the defendant Ford Motor Company.

"In support of his claim for damages, plaintiff contends that on or prior to April 28, 1956, defendant Ford Motor Company, caused to be placed on the market for sale to the public, a 1956 Ford automobile, manufactured by defendant for sale. Plaintiff contends that in the month of February, 1956, Clarence Dailey purchased this 1956 Ford automobile from Mills Motor Inc., of Brainerd, Minnesota, a dealer of the defendant. The plaintiff further contends that the ash tray located on the dash panel of the Ford automobile was defective as assembled and marketed by the defendant in that it had a sharp steel projection on its edge, or a burr, as it has been referred to in the evidence. It is plaintiff's contention that defendant was negligent in failing to discover this defect and in marketing an automobile containing a defective and dangerous piece of equipment; that as a result of this negligence, plaintiff, while riding in said automobile as a passenger, sustained an injury to his eye when he was thrown forward against the dash panel in such fashion that his eye came in contact with the sharp edge of the ash tray causing the injuries described in plaintiff's case and causing plaintiff to incur expense and to incur disability testified to by plaintiff and his witnesses.

"The defendant Ford Motor Company denies that plaintiff's injuries and damages were caused by any negligence on the defendant Ford Motor Company's part, and alleges that such injuries and damages were caused by the acts and omissions of parties over whom the defendant exercised no control, and that plaintiff's own negligence caused or contributed to his injuries and damages.

"Defendant Ford Motor Company by appropriate procedure made Clarence A. Dailey a third party defendant to this proceeding, and thereby has instituted a cause of action in its own behalf to recover from Clarence A. Dailey any amount that the court may determine the Ford Motor Company is entitled to for and after the conclusion of this case in the event that you should find in favor of the plaintiff against the Ford Motor Company. That will not concern you other than to answer the interrogatories, as I have provided for these special verdicts to be submitted to you.

"Now, in connection with the contentions of the third party defendant, Clarence A. Dailey, I wish to state that he denies that he negligently maintained and operated his automobile on the day of the accident, and alleges that the injuries and damages sustained by plaintiff, Marvin D. Zahn, were caused by the negligence of the Ford Motor Com-

---

6. Wood v. Gas Service Co., 8 Cir., 245 F.2d 653, 655, 657.

7. Torpey v. Red Owl Stores, Inc., 8 Cir., 228 F.2d 117, 121.

pany or of others over whom the third party defendant had no control. He also contends that when the unknown operator of the automobile, which he claims came upon Highway 218 without stopping as required by a stop sign—that this unexpected happening created an emergency to which he responded by applying the brakes, and swerving his car, to avoid a collision, and the injury to Zahn followed.

"The main questions of fact to be determined by you in deciding this case are as follows:

"First: Was the defendant Ford Motor Company negligent in respect to the matters which are claimed to have caused the injury to the plaintiff?

"Second: If such negligence of the defendant Ford Motor Company is found to have existed, was it a proximate cause of the injury complained of, to plaintiff?

"Third: Was the person injured guilty of negligence himself, which proximately contributed in some degree to his injury?

"Fourth: If you should find that the defendant Ford Motor Company was negligent and you further find that such negligence was a proximate cause of the injury to plaintiff, and if you further find that plaintiff did not contribute to his injury by his own negligence, then you will consider defendant Ford Motor Company's action against the third party defendant, Dailey, to which the same law pertaining to negligence applies as I have already outlined to you in plaintiff's action against defendant Ford Motor Company relative to negligence, proximate cause and burden of proof, and to all of which I shall make references later on in this charge.

\* \* \* \* \* \*

"Negligence is the basis of this action."

The remainder of the court's charge to the jury was consistent with the foregoing.

The court defined negligence, proximate cause and burden of proof all as related to the facts and evidence of the instant case. Dailey testified that he had no previous knowledge of the defect in the ash tray. He first learned of it after the accident, hence the claimed negligence of Dailey under the findings of the jury was not an intervening cause of the accident.

In the opinion of the court a proper inspection by Ford would have revealed the defect in question. If the ash tray was properly prepared for anticipated use by owner or guest there could be no liability on the part of Ford. However, the ash tray was defective. Inspection by Ford should make the defect and consequences foreseeable by the exercise of reasonable and prudent care, absent the negligence of Dailey as a sole or concurring proximate cause of the consequences which followed in unbroken sequence (without an intervening efficient cause), with the result that the negligence of Ford could be found by the jury to be the proximate cause of plaintiff's injury and damage. In this respect the instant case is readily distinguishable from the cases cited by diligent counsel.[8]

Negligence and proximate cause are ordinarily questions of fact for the jury. The jury having conclusively decided these fact questions in favor of plaintiff and Dailey, I can find no reason under the substantive law of Minnesota for vacating the judgment.

3. *Misconduct of counsel* is claimed as a basis for a new trial by Ford.

---

8. Childs v. Standard Oil Co., 149 Minn. 166, 182 N.W. 1000; Cook v. Person, 246 Minn. 119, 74 N.W.2d 389.

See, also, Olson v. Buskey, 220 Minn. 155, 19 N.W.2d 57; Wabash Railroad Co. v. Hartog, 8 Cir., 257 F.2d 401.

**942**

Review of the transcribed argument to the jury by plaintiff's counsel does not disclose anything beyond the permissible limits of approved jury argument.[9]

4. *Excessive damages* are assigned as a ground for vacation of the verdict.

 The decisions of the Supreme Court of Minnesota make clear that a trial court must take judicial notice of the shrinkage in the purchasing power of money when complaint is made that a verdict is excessive.[10] Considering this, and having in mind the plaintiff's age, the nature of his injury and disability and their effect on his future earning capacity, the court cannot say that the verdict is excessive.

Ford's alternative motions are denied.

It is so ordered.

An exception is allowed.

9. Flaherty v. Minneapolis & St. Louis Ry. Co., 251 Minn. 345, 87 N.W.2d 633.

10. Kauppi v. Northern Pacific Ry. Co., 235 Minn. 104, 49 N.W.2d 670; Crouch v. Chicago Great Western R. Co., 172 Minn. 447, 216 N.W. 234, 237.