STANLEY R. BURDICK v. JAMES H. BONGARD.

96 N. W. (2d) 868.

June 5, 1959—No. 37,647.

*Swensen & Miley* and *Thomas J. Burke,* for appellant.

*William H. DeParcq, Donald T. Barbeau,* and *Robert E. Anderson,* for respondent.

MATSON, JUSTICE.

This is an appeal from an order denying defendant's motion for judgment notwithstanding the verdict or in the alternative a new trial.

On August 5, 1956, at 4:30 p. m. an automobile jointly owned by plaintiff, Stanley R. Burdick, and his wife was involved in a collision with an automobile owned and driven by defendant, James H. Bongard. The facts leading up to the accident follow.

Cedar Street in St. Paul runs generally north and south. North of the area where Thirteenth Street crosses Cedar Street in an easterly-westerly direction, Cedar Street is divided by a grass boulevard separating it into northbound and southbound one-way streets. This center boulevard is 30 feet across and both the northbound and southbound roadways are 32 feet across. Anyone traveling south on Cedar Street is driving downhill at a grade of 7 to 7½ percent. The distance from the north curb line of Thirteenth Street to the south curb line of the next intersecting street to the north, namely, Central Avenue, is 491 feet.

Thirteenth Street is a one-way street for westbound traffic. Where it crosses the northbound lane of Cedar Street, stop signs—one on each side of the street—require Thirteenth Street travelers to stop before crossing Cedar Street's northbound lane. However, once a traveler is across the northbound lane, there are no stop signs at the grass or center boulevard requiring drivers to stop prior to entering Cedar's southbound traffic lane.

Taking, as we must, the evidence in the light most favorable to the verdict,[1] we have these facts. About August 1, 1956, plaintiff and his wife were visited by Mr. and Mrs. De La Garcia and their son and daughter, friends from Texas. Prior to Sunday, August 5, the day of the accident, plaintiff and his wife and their Texas friends had visited several points of interest in the Twin Cities area and at these times plaintiff did the driving. On the day of the accident, however, plaintiff's wife drove the car and seated with her in the front seat was Mrs. De La Garcia and her daughter. In the back seat sat plaintiff, Mr. De La Garcia, and a son of the latter. It was decided that plaintiff's wife should do the driving on this occasion because Mrs. De La Garcia was a short woman and would enjoy better vision from the front seat. The day was clear and the street surface was dry and in good condition.

After leaving plaintiff's home in Minneapolis, they drove to Taylors Falls, Stillwater, and thence to St. Paul where, just before the accident, they drove westerly on the one-way Thirteenth Street and arrived at the intersection with Cedar Street at 4:30 p. m. Plaintiff's wife stopped for the stop sign at the intersection. Then plaintiff's wife drove forward a few feet and stopped again to allow the De La Garcias to view the Capitol Building immediately to the north and to allow two or more northbound vehicles to pass. After viewing the capitol for a few minutes, plaintiff's wife drove across the northbound lane at about 5 to 10 miles per hour and when the grass boulevard was reached slowed down to about 2 miles per hour. At this point both plaintiff and plaintiff's

[1]Schleuder v. Soltow, 239 Minn. 453, 59 N. W. (2d) 320; Leitner v. Pacific Gamble Robinson Co. 223 Minn. 260, 26 N. W. (2d) 228; Dose v. Yager, 231 Minn. 90, 42 N. W. (2d) 420; Norton v. Nelson, 236 Minn. 237, 53 N. W. (2d) 31.

wife observed an automobile heading south on Cedar Street. Plaintiff's wife estimated the distance of the automobile from the intersection at about 300 feet and estimated its speed at 25 to 30 miles per hour. She testified, "it was so far away I didn't pay much attention to it." Plaintiff placed the distance from the intersection to the oncoming automobile at between 225 to 250 feet and its speed at 35 to 40 miles per hour.

Neither plaintiff nor his wife again observed the oncoming vehicle prior to her driving across the intersection at a speed of 5 to 10 miles per hour. The oncoming car struck plaintiff's car in the area of the right rear door at a point near the west curb line of Cedar Street. The collision spun both cars around to face the direction from which they came. Mrs. De La Garcia and her daughter were both thrown from plaintiff's car and defendant was thrown from his car.

The trial below resulted in a verdict for the plaintiff. The only issues before this court are whether the evidence reasonably supports the jury's findings: (1) That defendant was negligent; (2) that plaintiff's wife's negligence, if any, was not imputed to plaintiff; and (3) that plaintiff was not guilty of contributory negligence.

Considering the first and third issues, it is readily apparent that evidence exists from which the jury could reasonably find defendant negligent and plaintiff free from contributory negligence.

■ Defendant asserts that no evidence of his negligence exists since there is no direct proof that the automobile plaintiff and his wife observed to the north while at the grass boulevard was in fact defendant's automobile. Defendant charges the finding is based on speculation and conjecture.[2] The opposite side of the coin, however, is that basic hornbook law dictates that the jury determines *not* only facts regarding which there is direct testimony but also all reasonable inferences to be drawn therefrom.[3] Robert Bade, a witness for defendant, testified that he was traveling south on Cedar Street at approximately 90 to 100 feet behind defendant and first observed plaintiff's vehicle

[2]Hanrahan v. Safway Steel Scaffold Co. 233 Minn. 171, 46 N. W. (2d) 243.

[3]Jeske v. George R. Wolff Holding Co. 250 Minn. 16, 83 N. W. (2d) 729; Ranum v. Swenson, 220 Minn. 170, 19 N. W. (2d) 327.

opposite the grassy area while *90 to 100 feet from the intersection.* Defendant urges that a more reasonable inference is that the automobile observed by plaintiff and plaintiff's wife was Bade's rather than defendant's. The jury could reasonably find to the contrary and conclude that any observer looking down a roadway would not be likely to see the oncoming vehicle which was farther away while failing to observe the one closest to the observer. Upon the evidence, the jury's choice of inference must be sustained.

It must always be borne in mind that where the circumstantial evidence supplies a basis for diverse inferences the choice of inference made by the factfinder is to be sustained unless the conflicting inferences stand in equilibrium so that reasonable minds cannot prefer one over another, or unless the choice of inference is otherwise based on mere conjecture and speculation, or unless the inference adopted is manifestly contrary to the weight of the evidence as a whole.[4]

Moreover, if Bade's testimony is to be believed, it seems the collision never could have occurred since he placed defendant in the middle of the intersection at the same time plaintiff was yet at the grass boulevard. Similarly, defendant testified that when he was 200 feet from the intersection plaintiff's automobile was somewhat east of the northbound lane of Cedar Street. (This testimony was impeached by defendant's earlier deposition wherein he placed plaintiff at that time in the middle of Cedar Street's northbound lane of travel.) Since defendant testified that plaintiff's automobile and his automobile were traveling at approximately the same speed, the collision would not have occurred because plaintiff would have been past the intersection when defendant reached it. Taking the evidence as a whole, the jury could reasonably reject defendant's version of the accident and accept plaintiff's as true. Clearly, the resolution of such conflicting testimony was for the jury.

In fact any one of a number of acts of defendant would support a finding of negligence. He may have been negligent for failing to yield the right-of-way when plaintiff had reached the intersection an appre-

---

[4]See, Burke v. B. F. Nelson Mfg. Co. 219 Minn. 381, 18 N. W. (2d) 121; 7 Dunnell, Dig. (3 ed.) § 3234.

ciable length of time ahead of him.[5] The jury may have found that defendant had exceeded the speed limit not only from the testimony but also from the damages to defendant's automobile, fixed at $840.[6] They may have found defendant failed to keep a lookout.[7] Or the jury may reasonably have found that after defendant had discovered the danger he failed to use due care to avoid the collision by turning to the left.[8] In any event the evidence sustains the verdict on the issue of defendant's negligence.

■ The next question is whether plaintiff was contributorily negligent as a matter of law in failing to warn his wife of the oncoming automobile. The jury was instructed as to this question and defendant takes no issue with the charge. He alleges that Rutz v. Iacono, 229 Minn. 591, 595, 40 N. W. (2d) 892, 895, by the following language compels the finding that plaintiff was guilty of contributory negligence:

"The law of contributory negligence as it relates to guest passengers is that the jury must be able to find from the facts not only that the guest passenger was aware of the danger and aware that the driver was oblivious to it, but also that a protest or warning might have averted the accident."

Although plaintiff admitted observing defendant's vehicle and uttered no warning, it does not follow that plaintiff is liable under these facts. A passenger is under no duty to assume responsibility for the management of the car,[9] and he has no duty to take affirmative action to preserve his own safety except under some unusual circumstances such as when he has seasonably acquired knowledge of the incompetency or carelessness of the driver, or when he discovers a hazard of which he is aware that the driver is oblivious, and there are facts permitting a

[5]Halloran v. Tousignant, 230 Minn. 399, 41 N. W. (2d) 874; Yien Tsiang v. Minneapolis St. Ry. Co. 213 Minn. 21, 4 N. W. (2d) 630.

[6]Norton v. Nelson, 236 Minn. 237, 53 N. W. (2d) 31; Knuth v. Murphy, 237 Minn. 225, 54 N. W. (2d) 771.

[7]E. g., Rutz v. Iacono, 229 Minn. 591, 40 N. W. (2d) 892.

[8]See, Norton v. Nelson, 236 Minn. 237, 243, 53 N. W. (2d) 31, 35; Rutz v. Iacono, 229 Minn. 591, 595, 40 N. W. (2d) 892, 895.

[9]Hanson v. Bailey, 249 Minn. 495, 83 N. W. (2d) 252; Burgess v. Crafts, 184 Minn. 384, 238 N. W. 798.

finding that he discovered the hazard in time to have given the driver a warning which might have averted the accident.[10] We cannot hold as a matter of law that any warning from plaintiff would have averted the collision. Plaintiff's contributory negligence was properly submitted to the jury.[11]

The remaining issue is whether possible negligence of plaintiff's wife was imputed to plaintiff. Defendant argues that either a master-servant relationship existed between plaintiff and his wife or that they were engaged in a joint enterprise. Where a husband and a wife are co-owners of an automobile which one of them is driving, and in which the other is riding at the time of a collision, the contributory negligence of the driver is not imputable to the other as a matter of law simply because of co-ownership or because of marital relationship.[12] Defendant alleges, however, that other evidence, including the fact that the purpose of the trip was to entertain plaintiff's friend, that plaintiff testified he had a right to control the car and could assume the driving any time he desired, and that plaintiff requested his wife to do the driving, determines that his wife's negligence is imputable to him as a matter of law.

Defendant's position is that under Tschida v. Dorle, 235 Minn. 461, 51 N. W. (2d) 561, and Frankle v. Twedt, 234 Minn. 42, 47 N. W. (2d) 482, the *right* to control is sufficient and an actual exercise of that right is not required. The Frankle case, however, merely held that where the evidence as to the existence of a control characteristic of the relationship of master and servant is conflicting or admits of more than one reasonable inference, the question thereby raised is one of

[10]Hanson v. Bailey, *supra*; Kelling v. Howard, 249 Minn. 75, 81 N. W. (2d) 85.

[11]Schleuder v. Soltow, 239 Minn. 453, 59 N. W. (2d) 320; Jablinske v. Eckstrom, 247 Minn. 140, 76 N. W. (2d) 654; Johnson v. Mancilman, 241 Minn. 461, 63 N. W. (2d) 569; Ryan v. Griffin, 241 Minn. 91, 62 N. W. (2d) 504; Jeddeloh v. Hockenhull, 219 Minn. 541, 18 N. W. (2d) 582.

[12]Christensen v. Hennepin Transp. Co. Inc. 215 Minn. 394, 10 N. W. (2d) 406, 147 A. L. R. 945; 13 Dunnell, Dig. (3 ed.) § 7038(5); see, 2 Harper & James, Law of Torts, § 23.4.

fact for the jury. Furthermore, this is the general rule[13] and was satisfied by proper instructions in this case. In the Tschida case, plaintiff had the use of his brother's motorcycle as a bailee. Plaintiff allowed another to operate the motorcycle while plaintiff sat behind the operator as a passenger. The driver's negligence was held imputable to plaintiff as a matter of law on the ground that *the positive testimony permitted only one inference,* namely, that plaintiff bailee at all times retained such right to control the operator that they stood in the relationship of master and servant to each other. In the instant case, however, the evidence justifies more than one reasonably sustainable inference and there was a question of fact for the jury. The mere fact that husband and wife tacitly agree that the husband has the right to take over the task of driving the car when he so desires does not necessarily establish a master and servant relationship since it may be, and usually is, indicative of nothing more than the customary division of privileges or responsibilities which is a normal characteristic of the marriage relationship.

■ Were plaintiff and his wife engaged in a joint enterprise as a matter of law? Absent circumstances showing that a driver and his passenger have, or exercise, a *mutual* or joint right of control in guiding the movements of an automobile at the time of a collision, a joint enterprise does not arise between them from the mere fact that they are co-owners of the vehicle, or from the fact that they are husband and wife, or from the mere fact that they are associated together in taking the motor trip for a common purpose.[14] The word *mutual* is significant. There can be no joint enterprise unless each party has, not only in behalf of himself but in behalf of the other party, the right to control the agency employed to carry out their joint venture. In the case of a passenger and driver of an automobile there can be a joint

---

[13]See, also, Christensen v. Hennepin Transp. Co. Inc. 215 Minn. 394, 10 N. W. (2d) 406, 147 A. L. R. 945.

[14]Olson v. Kennedy Trading Co. 199 Minn. 493, 272 N. W. 381; Kokesh v. Price, 136 Minn. 304, 161 N. W. 715, 23 A. L. R. 643; Hollister v. Hines, 150 Minn. 185, 184 N. W. 856; Truso v. Ehnert, 177 Minn. 249, 225 N. W. 98; Prosser, Torts (2 ed.) § 65, p. 365; 13 Dunnell, Dig. (3 ed.) § 7038(4).

venture between them *only if each of them has the right to exercise control over the operation of the car.*[15] Realistically speaking, the joint enterprise concept is seldom applicable to the passenger and driver relationship. When it is applicable, the question of whether a joint venture exists for the operation of an automobile is normally a question for the jury. Conduct, or other circumstances, indicative of a *mutual* right of control, which are not only consistent with the existence of a joint enterprise but are equally consistent with, and are normally characteristic of, other human relationships present at best no more than an issue of fact and fall far short of establishing a joint enterprise as a matter of law. Characteristics common to a variety of legal relationships must be examined with caution lest a mistake of identity occurs. The mere fact that husband and wife occasionally relieve each other of the task of driving, or the mere fact that one or the other usually exercises the responsibility of driving, and as a usual practice has the right or privilege of taking the wheel, does not of itself establish a mutual right of control so as to create a joint venture at the time of a collision. The evidence in this case by no means establishes as a matter of law a joint enterprise in the operation of the vehicle, and defendant is in no position to complain because the issue was left to the jury. Whether the evidence would have sustained a finding of joint enterprise, we need not determine.

The disposition of the foregoing issues make it unnecessary to pass on the question of whether plaintiff's wife was negligent as a matter of law.

The order of the trial court is affirmed.

Affirmed.

---

[15]Olson v. Kennedy Trading Co. 199 Minn. 493, 272 N. W. 381.